Zia JAGHORY, Plaintiff–Appellant,

v.

NEW YORK STATE DEPARTMENT OF EDUCATION, Thomas Sobel, Commissioner of Education of the State of New York, in his official and individual capacity, Regents of the University of the State of New York, R. Carlos Carballada, individually and in his official capacity as Chancellor of the University of the State of New York, Jorge L. Batista, Shirley C. Brown, Walter Cooper, Willard A. Genrich, Norma Gluck, Emlyn I. Griffith, Carl T. Hayden, Mimi Leven Lieber, Floyd S. Linton, Saul Cohen, Louise P. Matteoni, James C. Dawson, Diane O'Neil McGivern and Adelaide L. Sanford, individually and in their official capacity as members of the Board of Regents of the University of the State of New York, New York State Board of Medicine, Defendants–Appellees.

Nos. 168, 97–7037.

United States Court of Appeals, Second Circuit.

Argued Sept. 22, 1997.

Decided Dec. 15, 1997.

Walter C. Reid, New York City (Carl E. Person, Person & Reid, of counsel), for Plaintiff–Appellant.

Barbara K. Hathaway, Assistant Attorney General for the State of New York, New

York City (Dennis C. Vacco, Attorney General, Peter H. Schiff, Deputy Solicitor General, Michael Belohlavek, Assistant Attorney General, of counsel), for Defendants–Appellees.

Before OAKES, MESKILL and CALABRESI, Circuit Judges.

OAKES, Senior Circuit Judge:

Plaintiff Zia Jaghory ("Jaghory") appeals under 28 U.S.C. § 1291 from a final order entered December 5, 1996, in the United States District Court for the Eastern District of New York (Frederic Block, J.), dismissing his claims brought under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985, and the New York State Human Rights Law, N.Y. Exec. Law §§ 290–301. Jaghory brought his claims against the New York State Department of Education, Thomas Sobel in his official and individual capacity as Commissioner of Education of the State of New York, the Board of Regents of the University of the State of New York, R. Carlos Carballada in his official and individual capacity as Chancellor of the University of the State of New York, named members of the Board of Regents in their official and individual capacities, and the New York State Board of Medicine [collectively, the "Board"]. Jaghory seeks to challenge, under the Equal Protection and Supremacy Clauses of the U.S. Constitution, New York state medical licensing laws that determine the length of residency required of graduates of foreign medical schools. The challenged laws distinguish applicants who were citizens or aliens with permanent U.S. residency status, from those who were non-resident aliens, at the time of their enrollment in foreign medical school. Jaghory claims error in the district court's determinations that the Eleventh Amendment of the U.S. Constitution bars his claims for damages against defendants in their official capacities, that Jaghory's claims for declaratory and injunctive relief against defendants are moot, and that the applicable statute of limitations bars his claims for damages against defendants in their individual capacities. We do not reach the merits of Jaghory's constitutional claims because we affirm the district court's dismissal of Jaghory's claims, on the grounds that he lacks standing and that the statute of limitations bars any case in which he may once have had standing.

## I.

### FACTS

Jaghory graduated from a medical school located outside the United States. At the time he entered medical school, he was neither a citizen nor a permanent resident of the United States. Jaghory immigrated to the United States in 1969 and became a naturalized U.S. citizen in 1975. In 1974, Jaghory passed the Educational Commission for Foreign Medical Graduates examination, and in 1977 successfully fulfilled the American Board of Anesthesiology's eligibility requirements. Jaghory passed the federal licensing examination for graduates of foreign medical school in 1984, receiving a grade that met New York State standards for licensure.

In 1983, Jaghory applied for a license to practice medicine in New York. New York law provides that, in order to be licensed to practice medicine in New York, applicants must satisfy education and experience requirements according to regulations promulgated by the Commissioner of Education. N.Y. Educ. Law § 6524(2), (3) (McKinney 1997). The applicable regulations require that "*all applicants* who make application for licensure ... shall have completed at least one year of postgraduate hospital training acceptable to the department...." N.Y. Comp.Codes R. & Regs. tit. 8, § 60.3(a) (1996) (emphasis added). Graduates of medical schools neither registered by the education department nor accredited by an acceptable accrediting organization, such as the school from which Jaghory graduated, must complete at least three years of approved postgraduate training. *See Id.* § 60.3(b)(2). The exception to the requirement pertaining to graduates of unaccredited medical schools, a statutory provision known as the "Fifth Pathway," allows a graduate "who at the time of his enrollment in a medical school outside the United States is a resident of the United States" to acquire a license after completing only the postgraduate hospital training "required by the Board of all applicants

for licensure." N.Y. Educ. Law § 6528(a) (McKinney 1997). Because Jaghory had not been a resident of the United States at the time he enrolled in foreign medical school, he was denied entry into the Fifth Pathway program in 1983. The Board rejected Jaghory's application because he had not completed the three years of residency required of graduates of foreign medical schools who do not qualify for the Fifth Pathway program. Jaghory complains that it was solely because of his national origin that he was denied entry into the Fifth Pathway.

Jaghory reapplied for a New York medical license several times between 1983 and 1994, and was denied each time. Jaghory argued to the Board that as a naturalized citizen he qualified for the Fifth Pathway program, with its one-year residency requirement, and that, in any event, his extensive medical background and experience more than satisfied the three-year residency requirement that the State was demanding of most foreign medical school graduates. New York law grants the Board power to "[w]aive education, experience and examination requirements for a professional license prescribed in the article relating to the profession, provided the board of regents shall be satisfied that the requirements of such article have been substantially met...." N.Y. Educ. Law § 6506(5) (McKinney 1997). In 1985, the Board, exercising this discretion, granted Jaghory two years' credit toward the three-year postgraduate residency requirement, based on his prior education and experience. However, Jaghory never completed the remaining one year of residency training. Over Jaghory's continuing protest and objection, the Board repeatedly denied Jaghory a license to practice medicine, until March 17, 1995, when the Board finally granted Jaghory a license despite his failure to complete the residency requirement. In the meantime, Jaghory had practiced medicine outside of New York.

## II.

### DISCUSSION

We review dismissal of a cause of action under Fed.R.Civ.P. 12(b)(1) or 12(b)(6) *de novo*. *See Belliveau v. Stevenson*, 123 F.3d 107, 108 (2d Cir.1997); *Close v. New York*, 125 F.3d 31, 35 (2d Cir.1997). Under these rules, the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994); *McEvoy v. Spencer*, 124 F.3d 92, 95 (2d Cir.1997); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 (2d Cir.1995). The court may not dismiss a complaint unless "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Hoover v. Ronwin*, 466 U.S. 558, 587, 104 S.Ct. 1989, 2005, 80 L.Ed.2d 590 (1984) (Stevens, J., dissenting); *see also Still v. DeBuono*, 101 F.3d 888, 891 (2d Cir.1996).

The district court dismissed the various counts of Jaghory's complaint below as moot, barred by the Eleventh Amendment to the U.S. Constitution, and barred by the statute of limitations applicable to civil rights suits brought in the state of New York. We affirm the district court's dismissal, but on the grounds that Jaghory lacks standing as required by Article III of the U.S. Constitution, and that any case in which Jaghory might have had standing in the past is now barred by the applicable statute of limitations. Because these holdings dispose of Jaghory's entire claim, we do not reach the issues presented regarding mootness or Eleventh Amendment immunity.

### A. Standing

Article III of the U.S. Constitution requires that a "case" or "controversy" be present in order to confer jurisidiction on federal courts for a particular claim; standing to sue is an essential component of that requirement. *See Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). The party seeking to invoke the jurisidiction of the court bears the burden of establishing that he has met the requirements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119

L.Ed.2d 351 (1992). "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant....'" *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979)). "The keystone for determining injury in fact is the requirement that it be 'distinct and palpable'—and, conversely, that it not be 'abstract' or 'conjectural' or 'hypothetical'." Laurence H. Tribe, *American Constitutional Law* § 3–16, at 114 (2d ed.1988) (quoting *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206; *Regan v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984)). This injury must be " 'fairly ... trace[able] to the challenged action of the defendant....'" *Lujan,* 504 U.S. at 560–61, 112 S.Ct. at 2136 (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976)). Finally, the injury must be one likely to be " 'redressed by a favorable decision.'" *Lujan,* 504 U.S. at 561, 112 S.Ct. at 2136 (quoting *Simon,* 426 U.S. at 38, 43, 96 S.Ct. at 1924, 1926).

■ Jaghory fails to meet the standing requirements; he does not plead that he suffered a concrete injury that can fairly be traced to any action of the defendants or that would be redressed by a favorable decision. Jaghory complains that, because of his national origin, he was not permitted to enter the Fifth Pathway program, which allows graduates of foreign medical schools to receive a license to practice medicine after only one year of residency. *See* N.Y. Educ. Law § 6528(a). While the Board did deny Jaghory entry into the Fifth Pathway program because of his residency status at the time of entry into medical school, the Board granted Jaghory two years' credit toward meeting his residency requirements, so that, in effect, Jaghory was required to complete only one year of residency. As of 1985, when the Board granted this credit, Jaghory suffered no injury because the Board placed him in the same position he would have occupied had he been permitted entry into the Fifth Pathway program. The regulations specify that one year of residency is required of all applicants, even those who are admitted to the Fifth Pathway. N.Y. Comp.Codes R. & Regs. tit. 8, § 60.3(a).

■ While the Board certainly had the discretionary power to waive that requirement, courts may reverse the Board's exercise of discretion under section 6506 only upon a finding that the Board's action was arbitrary and capricious. *See Tomanio v. Board of Regents of S.U.N.Y.,* 43 A.D.2d 643, 349 N.Y.S.2d 806, 808 (1973). Jaghory does not plead that the Board was arbitrary and capricious in its failure to waive the year of residency it required of him, nor may we infer that it was. In reviewing the Board's exercise of discretion, "the court may not substitute its own judgment for that of the board and may inquire only as to whether the record shows *facts* which leave no possible scope for the reasonable exercise of discretion." *Id.* (citation omitted) (emphasis added). Jaghory is apparently asking us to assume, without any specific factual allegations, that he would have been in a more favorable position had he been required to serve one year of residency under the Fifth Pathway than under a waiver authorized by section 6506(5); that if the Board exercised its discretion to grant him two-years' credit under section 6506(5), it would have exercised its discretion to waive the entirety of the generally applicable requirement under the Fifth Pathway. This assumption is too abstract and conjectural to confer jurisdiction on us. *See Warth,* 422 U.S. at 508–09, 95 S.Ct. at 2210. Nor can we fairly trace the Board's denial of Jaghory's license to the distinction that kept Jaghory out of the Fifth Pathway, since under the explicit terms of the Fifth Pathway, Jaghory would have had to serve one year of residency to become licensed, which he never did. Even putting aside the concerns expressed by the appellee and the lower court regarding the present mootness of many of Jaghory's requests for relief, the alleged injury was not one that could have been redressed by a favorable decision. At most, a favorable decision

would have required defendants to allow Jaghory into the Fifth Pathway, which by its terms requires one year of residency of all applicants. Because Jaghory has pled no facts regarding whether the action of the Board in requiring him to serve that one year of residency was arbitrary or capricious in his case, this court is in no position to examine how the discretion of the Board was exercised. Without facts upon which to base examination of the Board's exercise of discretion, we could neither order the Board to use its discretion any particular way with respect to waiving that year, nor compensate Jaghory for the Board's failure to do so.

Jaghory misapplies the Supreme Court's holding in *Northeastern Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993), to argue that he has standing despite his lack of concrete injury. In that case, members of a trade association consisting of businesses owned by white males did have standing to challenge the constitutionality of an ordinance requiring that a percentage of municipal funds be set aside for minority or female-owned businesses. *Id.* at 667–68, 113 S.Ct. at 2302–04. To establish the "injury in fact" requisite for standing, the applicants did not need to plead that they would have obtained the contracts but for the challenged provision, because their "injury in fact" was the denial of equal footing to compete for the contracts, not denial of the contracts themselves. *Id.; see also Williams v. Lambert*, 46 F.3d 1275, 1277–78, 1280 (2d Cir.1995) (holding that mother of child born out of wedlock had standing to challenge New York law that denied her access to courts for modification of a child support agreement but allowed access to parents of "legitimate" children; plaintiff did not have to show that she would have been entitled to have her settlement agreement modified). In Jaghory's case, while he was denied access to the Fifth Pathway under the statutory scheme he challenges, the Board used its discretion to place him in precisely the same position he would have occupied had he been allowed into the Fifth Pathway, and he failed to meet the Fifth Pathway's explicit requirement. Just as the contractors in *Associated General*

would not have had standing if the city had used its discretion to set aside equivalent city funds for their particular organization, and the mother in *Williams* would not have had standing if the New York court had used its discretion to hear her case, Jaghory has no standing to challenge a statutory distinction that kept him out of the Fifth Pathway when the Board used its discretion to place him on footing equal to that enjoyed by applicants under the Fifth Pathway.

## B. Statute of Limitations

 The district court found that because the Board's initial rejection of Jaghory's medical license application took place in 1983, over twelve years before he filed suit, his claim was barred by the statute of limitations. *Jaghory v. New York State Dep't of Educ.*, No. 95 CV 3478(FB), 1996 WL 712668, at *4–5 (E.D.N.Y. Dec. 5, 1996). Under federal law, which governs when claims brought under §§ 1983 and 1985 accrue, the statute of limitations begins to run once the plaintiff knows of the injury on which the claim is based. *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir.1994). Jaghory argued below, as he does here, that the "continuing violation doctrine" should apply to his claims because he made several renewal applications, the most recent being in 1994. *See Jaghory*, 1996 WL 712668 at *4–5. The continuing violation doctrine delays the point at which the statute of limitations begins to run. When a plaintiff experiences a "continuous practice and policy of discrimination ... the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Cornwell*, 23 F.3d at 703 (citations and internal quotations omitted). While the district court found that Jaghory's claims did not meet the requirements of the continuing violation doctrine, we do not need to decide that issue. The only period during which Jaghory may be said to have had standing to sue was the period between his first application for a license in 1983, and the Board's decision in 1985 to waive two years of the three years it originally had required of him. Because the statute of limitations for a claim under § 1983 that accrued in New York is three years, *see*

*Board of Regents of S.U.N.Y. v. Tomanio,* 446 U.S. 478, 484, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980), the period between Jaghory's application for a license and the Board's waiver of two of the years of residency required of him falls outside the statute. Since Jaghory ceased to have standing after 1985 for lack of injury in fact, no part of any alleged violation occurred within the statute. *See Cornwell,* 23 F.3d at 704.

### III.

### CONCLUSION

For the foregoing reasons, we affirm the dismissal of Jaghory's claims.