**Julia GAMBINO, Plaintiff,**

v.

**Herbert RUBENFELD, Esq., Defendant.**

**No. CV 01–1300(ADS).**

United States District Court, E.D. New York.

Jan. 5, 2002.

Julia Gambino, Farmingdale, NY, Plaintiff pro se.

Herbert Rubenfeld, Road Melville, NY, Defendant pro se.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff *pro se* commenced this action pursuant to the Declaratory Judgment Act, 42 U.S.C. § 1983, and New York Judiciary Law § 487. Presently before the Court is the defendant's motion to dismiss the plaintiff's complaint for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1).

### *BACKGROUND*

This dispute concerns the nonpayment of legal fees owed to the defendant by the plaintiff, whom the defendant represented in a divorce proceeding from 1986 to 1989. That proceeding culminated in the plaintiff being granted a Judgment of Divorce by the Nassau County Supreme Court on June 26, 1989. While the divorce action was pending, the plaintiff signed an affidavit of confession of judgment in the principal sum of $25,014.50. The confession of judgment reflected the cumulative unpaid legal fees that the defendant was owed by the plaintiff as of the date the confession was executed. At the conclusion of the divorce proceeding, the defendant filed the affidavit of confession of judgment with the Supreme Court, and a judgment was entered against the plaintiff in the amount of $25,014.50.

In early 1993, the plaintiff filed a motion to vacate the $25,014.50 judgment in the Nassau County Supreme Court. In support of her application, the plaintiff testified that she had no recollection of having executed the affidavit of confession of judgment and further claimed that the defendant never explained the legal and financial ramifications of that document. The Supreme Court found that the defendant failed to comprehensively explain the legal character, purpose and effect of the confession of judgment to the plaintiff before she executed the document. In addition, the Supreme Court concluded that the confession was impermissibly used as "more than mere security" because the defendant had instructed the plaintiff to execute the affidavit while his representation was ongoing rather than at the conclusion of the matters upon which he represented her. Accordingly, on August 5, 1993, Nassau County Supreme Court Justice Roberto granted the plaintiff's motion to vacate the judgment entered against her.

On March 29, 1995, the Appellate Division, Second Department, rendered a Decision and Order reversing the order of the Nassau County Supreme Court and reinstated the $25,014.50 judgment in favor of the defendant. *Rubenfeld v. Gambino,* 213 A.D.2d 709, 624 N.Y.S.2d 957 (2nd Dept.1995). Pursuant to that Decision, the Second Department found that the plaintiff had failed to establish, by the applicable evidentiary standard, any fraud, misconduct or other circumstance that would require the judgment to be vacated. The Second Department further found that the defendant satisfactorily explained to the plaintiff the nature and purpose of the affidavit of confession of judgment and that there was no impropriety in the plain-

tiff's confessing judgment for services already rendered when the defendant was still representing her in the underlying divorce proceeding.

The plaintiff subsequently filed a motion with the Second Department, seeking reargument of that Court's March 29, 1995 Decision. On June 25, 1996, the Second Department rendered a Decision denying the plaintiff's request. *Rubenfeld v. Gambino*, No. 93–05727 (N.Y.S.2d June 25, 1996). Thereafter, the plaintiff filed a motion for leave to appeal to the State of New York Court of Appeals. On November 14, 1996, the Court of Appeals dismissed the plaintiff's motion upon the ground that "the order sought to be appealed from does not finally determine the action within the meaning of the Constitution." *Rubenfeld v. Gambino*, 89 N.Y.2d 860, 653 N.Y.S.2d 282, 675 N.E.2d 1235 (N.Y.1996).

On May 19, 1999, the defendant brought a proceeding in the Nassau County Supreme Court requesting that the $25,014.50 judgment against the plaintiff be extended for ten additional years. The defendant's motion was granted on July 19, 1999. At that time, the defendant obtained a court order resulting in a lien on the plaintiff's home. In January 2001, the defendant commenced a proceeding in Nassau Country Supreme Court pursuant to New York CPLR § 5206(e) to enforce the judgment. On March 9, 2001, the plaintiff paid the judgment owed to the defendant who then provided her with a satisfaction of judgment. In addition, on that day, the parties signed a stipulation discontinuing the action with prejudice.

On March 2, 2001, the plaintiff commenced the instant action. While not clearly articulated, the plaintiff's complaint alleges that the defendant withheld material facts and misrepresented the record to the Appellate Division, Second Department during the course of his appeal from the August 5, 1993 Decision and Order of the Nassau County Supreme Court. The complaint further alleges that the defendant's "status" and "perceived credibility as a state-licensed attorney" enabled him to violate the plaintiff's due process rights by forcing the sale of the plaintiff's home, upon which the defendant had placed a lien.

In her first count, the plaintiff seeks a declaratory judgment for what she characterizes as the "taking of [her] property without due process," and asks that this Court "create a remedy for the grievous injustice which implicates federal public policy." In the plaintiff's second count, she contends that she is entitled to monetary damages pursuant to 42 U.S.C. § 1983 and New York Judiciary Law § 487.

## DISCUSSION

### A. As to the standard for dismissal under Rule 12(b)(1)

█ Fed.R.Civ.P. 12(b)(1) provides for the dismissal of a complaint when the federal court "lacks jurisdiction over the subject matter." Federal subject matter jurisdiction exists only when a "federal question" is presented under 28 U.S.C. § 1331, or, as provided in 28 U.S.C. § 1332, where the plaintiffs and all the defendants are of diverse citizenship and the amount in controversy exceeds $75,000. *See Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir.2000).

█ If the exercise of that jurisdiction would result in the reversal or modification of a state court judgment, federal district courts lack subject matter jurisdiction, even if there is a predicate for the exercise of federal jurisdiction, *Davis v. City of New York*, 2000 WL 1877045 *3 (S.D.N.Y.2000) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149,

68 L.Ed. 362 (1923)). Where jurisdiction is lacking, the district court must dismiss the Complaint without regard to its merits. *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1188 (2d Cir.1996). Importantly, the party seeking to invoke federal jurisdiction carries the burden of proof in establishing that jurisdiction. *See Linardos v. Fortuna,* 157 F.3d 945, 947 (2d Cir.1998).

 A motion to dismiss for subject matter jurisdiction under Rule 12(b)(1) is reviewed under the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Moore v. PaineWebber, Inc.,* 189 F.3d 165, 169 n. 3 (2d Cir.1999); *Jaghory v. New York State Department of Education,* 131 F.3d 326, 329 (2d Cir.1997). Specifically, the Court must review the allegations in the light most favorable to the Plaintiffs, and draw all reasonable inferences in their favor. *Id.* The Court is not confined to the four corners of the Complaint, however, and may consider evidence outside the pleadings. *Davis v. City of New York,* 2000 WL 1877045 *3 (S.D.N.Y.2000) (citing *Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986)).

## B. As to the Rooker–Feldman Doctrine

 In his motion to dismiss, the defendant asserts that this Court lacks subject matter jurisdiction pursuant to the judicially created *Rooker–Feldman* doctrine. The *Rooker–Feldman* doctrine was initially articulated in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and its principle subsequently re-affirmed in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The essence of the doctrine is that, among federal courts, only the United States Supreme Court maintains subject matter jur-

isdiction to review state court judgments. *See Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 197 (2d Cir. 1996) (stating that the federal review of state court judgments "can occur only by way of a certiorari petition to the Supreme Court").

 In addition, under this doctrine, a federal court is without subject matter jurisdiction if the federal claim is "inextricably intertwined" with a state court judgment. *See Moccio,* 95 F.3d at 199–200; *Davis v. City of New York,* 2000 WL 1877045 *4 (S.D.N.Y. December 27, 2000) (citing *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. at 1316 n. 16). In *Rivers v. McLeod,* 252 F.3d 99, 101 (2d Cir.2001) (quoting *Moccio,* 95 F.3d at 198), the Second Circuit interpreted the term "inextricably intertwined" to be co-extensive with the principles of preclusion. " '[I]nextricably intertwined' means, at a minimum, that where a federal plaintiff had an opportunity to litigate in a state proceeding ... subsequent litigation of the claim will be barred under the Rooker Feldman doctrine if it would be barred under the principles of preclusion." *Id.*

In determining whether a federal claim is "inextricably intertwined" with a state court judgment, a federal district court must determine whether the plaintiff's alleged injury was a product of the state court judgment or whether the alleged injury is separate and distinct from that judgment. *See Johnson v. The Smithsonian Institution,* 189 F.3d 180, 186 (2d Cir. 1999) (citing *Garry v. Geils,* 82 F.3d 1362, 1365 (7th Cir.1996)) ("[T]he fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment. If the injury alleged resulted from the state court judgment itself, *Rooker Feldman* di-

rects that the lower federal courts lack jurisdiction.").

■ To the extent that the plaintiff asks this Court to overturn or cast doubt on the Second Department's Decision of March 29, 1995, such action by this Court is barred by the *Rooker–Feldman* doctrine. Pursuant to 28 U.S.C. § 1257, the United States Supreme Court has exclusive federal jurisdiction to review state court judgments while, on the other hand, 28 U.S.C. §§ 1331 and 1334 confer upon federal district courts original but not appellate jurisdiction. Under the Congressional mandate, only the United States Supreme Court could potentially entertain a proceeding to modify or reverse the Second Department's order reinstating the $25,014.50 judgment. Furthermore, the plaintiff's alleged injury is "inextricably intertwined" or a product not separate and distinct from the Appellate Division, Second Department's judgment. Accordingly, this Court lacks subject matter jurisdiction to review or undermine that decision.

## C. As to the Declaratory Judgment Act

■ The plaintiff asserts that federal subject matter jurisdiction is predicated on the existence of an "actual controversy" under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment Act provides that in a "case of actual controversy within its jurisdiction" a court of the United States may "declare the rights and other legal relations" of an interested party "whether or not further relief is or could be sought". 28 U.S.C. 2201(a); *Connecticut Yankee Atomic Power Co. v. Town of Haddam Planning and Zoning Com'n,* 2001 WL 1167816 *1 (2d Cir. October 1, 2001). Incorporated in the Declaratory Judgment Act is the case or controversy limitation on federal jurisdiction pronounced in Article III, Section 2 of the United States Constitution. *Id.* (citing *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians,* 94 F.3d 747, 752 (2d Cir.1996)). A declaratory judgment action presents an actual controversy if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." *In re Prudential Lines Inc.,* 158 F.3d 65, 70 (2d Cir.1998) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)) (emphasis in original).

The Court finds that no actual controversy exists here. The plaintiff's claim that the defendant "misrepresented the record" to the Appellate Division, Second Department would be barred under principles of preclusion because the issue was litigated in Nassau County Supreme Court and reviewed by the Second Department. *See Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir.1995) (stating that collateral estoppel applies when the issue in question was actually decided in a prior proceeding). The Second Department addressed the plaintiff's claim and concluded that the defendant deceived neither the plaintiff nor the court. The Second Department also denied the plaintiff's request for reargument. Furthermore, the New York Court of Appeals dismissed the plaintiff's motion for leave to appeal. The Court is also mindful that on March 9, 2001, the parties signed a stipulation discontinuing the Supreme Court action with prejudice. Because no actual controversy of sufficient immediacy and reality exists, the Court is powerless to decide this matter.

## D. As to the Section 1983 claim

■ Although there is no federal jurisdiction here, to complete the record,

the Court will decide the remaining issues. In Section 1983 claims, the Court looks to the statute of limitations for injury to property actions in the state in which the alleged constitutional deprivation took place. *Lounsbury v. Jeffries,* 25 F.3d 131, 133 (2d Cir.1994) (citing *Wilson v. Garcia,* 471 U.S. 261, 272 n. 25, 105 S.Ct. 1938, 1945 n. 25, 85 L.Ed.2d 254 (1985)). In New York, the applicable statute of limitations period is three years. *Owens v. Okure,* 488 U.S. 235, 250–51, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989); *see* N.Y. C.P.L.R. 214(4) (McKinney 2001). Although state law supplies the statute of limitations for claims under Section 1983, federal law determines when a federal claim accrues. A federal claim accrues when the plaintiff " 'knows or has reason to know of the harm.' " *Connolly v. McCall,* 254 F.3d 36, 40 (2d. Cir.2001) (quoting *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir.1994)).

To the extent that the plaintiff had any cognizable claim under Section 1983, it accrued at the latest on March 25, 1995, the date on which the Appellate Division, Second Department reversed the order of the Nassau County Supreme Court and reinstated the $25,014.50 judgment in favor of the defendant. The plaintiff's claims were filed more than three years after accrual and are therefore time-barred.

■■■■ Assuming, arguendo, that the *pro se* plaintiff's Section 1983 claim was filed timely, nevertheless it must be dismissed because any constitutional deprivation that the plaintiff may have suffered was not the result of the exercise of a right or privilege authorized by the state. To allege a claim under Section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."

*West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). It is well settled that an attorney engaged in civil litigation on behalf of a private client cannot be said to be acting under color of state law in the absence of specific claims of unlawful cooperation with state officials. *Housand v. Heiman,* 594 F.2d 923, 925 n. 3 (2d Cir.1979) (citing *U.S. v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)).

■■■ Misuse of the law by an individual attorney can be fairly attributed to the State only under certain narrow circumstances. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 938–41, 102 S.Ct. 2744, 2754–57, 73 L.Ed.2d 482 (1982). In *Dahlberg v. Becker,* 748 F.2d 85 (2d Cir.1984), cert. denied, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985), the Second Circuit determined that "[s]ince a State is charged with the responsibility of assuring that its laws are constitutional," an attorney is not exercising a right or privilege authorized by the state if he allegedly misuses a valid state statute. *Dahlberg,* 748 F.2d at 90–91; *see also Lugar* 457 U.S. at 937–40, 102 S.Ct. at 2753–56; *Srubar v. Rosenberg,* 875 F.Supp. 155, 163 (S.D.N.Y.1994), aff'd, 71 F.3d 406 (2d Cir.1995) ("[L]awyers . . . are not clothed with the state's authority because they are using the state's judicial process or because they are officers of the court"). As the opposing attorney to the plaintiff in a prior action, the defendant in *Dahlberg* omitted statutorily required notice provisions from an order to show cause and submitted perjurious documents. *Dahlberg,* 748 F.2d at 87–88. Affirming the district court's dismissal of the plaintiff's Section 1983 complaint for failure to state a claim, the Second Circuit found that "private misuse of [New York's Judiciary Law] does not describe conduct that can be attributed to the State. . . . " *Id.* at 90 (citations omitted).

Even when drawing all reasonable inferences in favor of the plaintiff, her complaint fails to allege any facts indicating that there was any unlawful cooperation or concerted action between the defendant and a state official. To the contrary, the plaintiff's complaint alleges that the defendant misled and deceived the Appellate Division, Second Department by concealing information and misrepresenting facts contained in the appellate record. The complaint in this case alleges that by granting the defendant a license to practice law, the State of New York effectively enabled the defendant to place a lien upon the plaintiff's property and ultimately force the sale of her home. This is patently incorrect.

■ The plaintiff does not make any other factual allegations that the defendant was acting under color of state law. The defendant is not a "state actor" simply because the State of New York has granted him a license to practice law. *See Johnson v. Chemical Bank*, 1996 WL 706893 (S.D.N.Y. December 9, 1996) ("The mere fact that the defendants utilized state statutes to pursue a state court remedy against the plaintiff does not constitute 'state action' by private parties"). Adopting the plaintiff's logic, a holder of a valid New York driver's license would be deemed a state actor upon receipt of a driver's license from the New York Department of Motor Vehicles. Accordingly, the plaintiff's Section 1983 claim must be dismissed as she failed to prove that the defendant acted under the color of state law.

### E. As to New York Judiciary Law § 487.

The plaintiff's complaint alleges that the defendant is guilty of deceit and that he intended to deceive the plaintiff and the Appellate Division, Second Department in violation of New York Judiciary Law § 487 governing the conduct of attorneys. In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a). Because this Court does not have original jurisdiction over this action, at this early stage of the litigation it declines to exercise supplemental jurisdiction in regard to any action under the New York Judiciary Law, if any such action exists. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss the plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(1) is **GRANTED**; and it is further

**ORDERED**, the plaintiff's complaint is dismissed in its entirety with prejudice; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case; and it is further

**ORDERED**, that the Clerk of the Court is directed to send a copy of this Order to the plaintiff and the defendant by regular first class mail and by certified mail return receipt requested.

**SO ORDERED.**