**Stephen J. WALKER, Plaintiff,**

v.

**State of NEW YORK, New York State Office of Temporary and Disability Assistance, New York State Department of Taxation and Finance, Sandra C. Walker, Defendants.**

No. 03–CV–4490 (DRH)(ETB).

United States District Court,
E.D. New York.

Nov. 22, 2004.

Michael Varble, Shoreham, NY, for Plaintiff.

Eliot Spitzer, Attorney General for the State of New York, by Susan M. Connolly, Assistant Attorney General, Happauge, NY, for Defendants.

## MEMORANDUM OPINION AND ORDER

HURLEY, District Judge.

### INTRODUCTION

Plaintiff Stephen J. Walker challenges the constitutionality of a New York law allowing the issuance of *pendente lite* awards of child support and spousal maintenance in divorce proceedings. The defendants (collectively, "the State") have moved to dismiss the complaint. As explained more fully herein, because the "Rooker–Feldman Doctrine" bars jurisdic-

tion over Plaintiff's claims, the Defendants' request is GRANTED.

### BACKGROUND

I. *New York's "Pendent Lite" Spousal Maintenance and Child Support Scheme*

Under Section 236(b)(6) of the New York Domestic Relations Law, during a pending matrimonial action the court may order temporary maintenance, based on a variety of considerations, "as justice requires."[1] Such an order is "effective as of the date of the application therefor," and the court may order payment of any retroactive amount of maintenance due. Similarly, under Section 236(b)(7) of the DRL, during a pending matrimonial action the court may order either parent to pay temporary child support "without requiring a showing of immediate or emergency need," and "notwithstanding that information with respect to income and assets of either or both parents may be unavailable." This order is likewise effective "as of the date of its application therefor," and any retroactive amount of child support due is "enforceable in any manner provided by law."

Under Section 244 of the DRL, where a divorcing or divorced spouse defaults on a required payment (including temporary child or spousal support), the court may enter judgment for the amount of arrears, with costs and disbursements, plus interest on the amount of any arrears if the default was willful. This judgment is enforceable in any manner provided by law for the collection of money judgments. Where a defaulting spouse accumulates support arrears equal to or greater than four months' total support obligations, Section 244–b authorizes the court to order the department of motor vehicles to suspend the spouse's driving privileges; Section 244–c author-

---

1. Unless a pre-nuptial agreement states otherwise. See N.Y. D.R.L. § 236(b)(6).

izes the court to order any board, department, authority or office under whom the spouse is professionally affiliated to suspend any "license, permit, registration, or authority to practice"; and Section 244–d authorizes the court to "order any agency responsible for the issuance of a recreational license to suspend or refuse to reissue a license" to the spouse, or to deny his application for such a license.

According to the complaint, this scheme for ordering and enforcing payment of *pendente lite* (temporary) support "fails to require a constitutionally mandated due process hearing before granting relief." Complaint at ¶ 1. As a result, "[t]he amounts awarded are purely arbitrary and not based upon any findings of fact whatsoever, and, in the case of excessive or grossly excessive awards, there is absolutely no recourse whatsoever to an aggrieved party." *Id.* The statutes therefore, both facially and as applied, violate the constitutional due process right of "non-custodial parents and/or payor spouses."

The complaint also alleges that the above statutes "intentionally invidiously discriminate, without a compelling state interest, against a defined and identifiable 'class' of people, to wit: 'familial obligors' who are non-custodial parents and/or spouses." Complaint at ¶ 2. Further, according to the complaint, this scheme affects "most if not all" New York citizens involved in divorce or support proceedings, and results in "'temporary' awards [that] are, in fact, 'permanent.'" Complaint at ¶ 4. This is because the excessive temporary awards inevitably lead to inflated arrears, and the harsh statutory enforcement scheme, in turn, then traps and stigmatizes the payor parent or spouse under a "growing mountain of unconstitutional prejudice." *Id.* Finally, according to the complaint, the excessive temporary awards

also incentivize dilatory conduct by, and amount to "unjust enrichment" of, the obligee spouse or parent, and can "become an obligee parent's nefarious vehicle for parental alienation and the breakdown of the non-custodial parent-child relationship." *Id.*

## II.  *Facts and Proceedings*

The factual background of this case is less than fully clear from the record. At some point in the late 1980's, divorce proceedings were initiated between Stephen and Sandra Walker. Complaint at ¶ 5. In 1991, with the proceedings apparently still pending, the New York Supreme Court granted Sandra Walker's requested award of $150 per week in *pendente lite* spousal maintenance, and $150 per week in child support for each of the couple's three children. *Walker v. Walker,* 193 A.D.2d 730, 597 N.Y.S.2d 710 (N.Y.App.Div.1993). Plaintiff appealed these awards as excessive. The Appellate Division affirmed, refusing to substitute its discretion for the trial court's on the conflicting affidavits in the record. *Id.* The court found that the Supreme Court had "considered all of the relevant factors, and the award, given the parties' standard of living is not excessive." *Id.* The court noted that "[t]emporary maintenance and child support are designed to insure that a needy spouse is provided with funds for his or her support and reasonable needs pending trial, and a speedy trial is the best remedy for perceived inequities in such awards." *Id.* Plaintiff sought a "downward modification" of the *pendente lite* support award in 1995, which the Supreme Court denied. The Appellate Division affirmed, on essentially the same grounds as its prior decision. *Walker v. Walker,* 227 A.D.2d 469, 642 N.Y.S.2d 703 (N.Y.App.Div.1996).

Following a non-jury trial, in September 1999 the Supreme Court entered a divorce

decree for the Walkers, which included a refusal to retroactively reduce Plaintiff's *pendente lite* maintenance and child support obligations. *Walker v. Walker*, 289 A.D.2d 225, 734 N.Y.S.2d 470 (N.Y.App. Div.2001). On appeal, the Appellate Division again refused to reduce Plaintiff's allegedly excessive *pendente lite* obligations. *Id.* at 226, 734 N.Y.S.2d 470. The court noted that the Supreme Court had properly denied Stephen Walker's motion to suspend support payments (based on Sandra Walker's alleged interference with his visitation rights); properly imputed his income for child support purposes; and properly refused to impose a constructive trust on certain properties conveyed from Stephen to Sandra during their marriage, in light of Stephen's testimony that he "conveyed the properties as part of a fraudulent scheme to hide them from his creditors." *Id.* Finally, the Appellate Division noted without elaboration that Stephen's "remaining contentions are without merit." *Id.* Plaintiff apparently appealed this ruling to the New York Court of Appeals "on constitutional grounds," but the Court dismissed his appeal without explanation. *Walker v. Walker*, 98 N.Y.2d 646, 745 N.Y.S.2d 503, 772 N.E.2d 606 (2002).

On or about September 9, 2003, Plaintiff filed the present federal lawsuit, claiming that his *pendente lite* award was unsupported by "one scintilla of evidence," and "grossly excessive by more than 400 percent." Complaint at ¶ 45–r. Plaintiff also claims that he had "accumulated arrears of *pendente lite* support in the amount of more than $167,000.00" at the time of trial, *id.*, and that the application of the *pendente lite* scheme has caused him permanent prejudice by depriving him of numerous liberty, property, and familial rights. Complaint at ¶¶ 61, 70. On March 4, 2004, the State moved to dismiss his complaint. In his opposition memorandum of March 31, 2004, Plaintiff offered to amend his complaint to include other similarly situated individuals, and to seek certification for a class action.

## DISCUSSION

### I. Legal Standard for Dismissal

The State's Motion to Dismiss is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. See State's Notice of Motion. But Plaintiff suggests that because the State's memorandum deals with jurisdictional issues, the State's motion should more properly be considered a motion to dismiss pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction. Pltf. Memo at 1. The issue is academic, since motions to dismiss for subject matter jurisdiction under Rule 12(b)(1) are reviewed under the same standards as motions to dismiss for failure to state a claim under Rule 12(b)(6). See *Gambino v. Rubenfeld*, 179 F.Supp.2d 62, 67 (E.D.N.Y.2002) (citing *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169 n. 3 (2d Cir.1999); and *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997)). Specifically, the court must "review the allegations in the light most favorable to the Plaintiffs, and draw all reasonable inferences in their favor." *Id.* If, despite this review, a plaintiff fails to demonstrate a basis for federal jurisdiction, or if it appears beyond doubt that he can prove no set of facts in support of his claim that entitle him to relief, the case must be dismissed. *Integrated Tech. & Dev., Inc. v. Rosenfield*, 103 F.Supp.2d 574, 577–78 (E.D.N.Y.2000) (citing *King v. Simpson*, 189 F.3d 284, 286 (2d Cir.1999); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996); *Moore*, 189 F.3d at 169 n. 3; and *Jaghory*, 131 F.3d at 329).

### II. The Rooker–Feldman Doctrine bars consideration of Plaintiff's claim.

The State argues that the "*Rooker–Feldman* Doctrine" deprives this Court of

subject-matter jurisdiction over the present case.[2] Plaintiff argues that the doctrine does not apply to his claim, because he is not requesting the review, reversal, or modification of a state court's judgment. Pltf. Memo at 4–5. Alternatively, Plaintiff argues that his case fits within an exception to the doctrine. *Id.* at 6–7. Both of Plaintiff's arguments are erroneous.

### A. *Plaintiff is requesting a direct reversal of the state courts' judgment, not a general challenge to the constitutionality of the law.*

■ "The *Rooker–Feldman* doctrine provides that, because only the United States Supreme Court may review a final decision of a state court, federal district courts do not have jurisdiction over claims that have already been decided, or that are 'inextricably intertwined' with issues that have already been decided, by a state court." *Bridgewater Operating Corp. v. Feldstein,* 346 F.3d 27, 29 (2d Cir.2003). However, the Supreme Court also stated in *District of Columbia Court of Appeals v. Feldman,* the case fully defining the doctrine, that although "a United States District Court has no authority to review final judgments of a state court in judicial proceedings," a district court does have authority to consider a "general challenge to the constitutionality" of a state law, even if mounted by the parties defeated in a state judicial proceeding decided pursuant to that law. 460 U.S. 462, 482–83, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

Plaintiff insists that he is "not challenging any specific state court judgment," but rather, is "challenging the statutory scheme, i.e., the procedures leading up to the judgment and making a 'general challenge' to the subject statutes in question." Pltf. Memo at 5. This, says Plaintiff, is permitted under *Rooker–Feldman. Id.* While a cursory perusal of *Feldman*'s language suggests potential merit in Plaintiff's argument, a closer look indicates that Plaintiff has misread the applicable law, or distorted the nature of his state claim.

■ The Supreme Court stressed in a note in *Feldman* that a federal district court may not, even "in essence," review a state court decision. 460 U.S. at 482, n. 16, 103 S.Ct. 1303. Justice Brennan, the author of *Feldman,* later explained that the inferior federal courts do not impermissibly review state decisions if the constitutional claims presented to the federal court are " 'separable from and collateral to' the merits of the state-court judgment." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 21, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Brennan, J., concurring). And the Second Circuit has agreed that "a federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Hachamovitch v. DeBuono,* 159 F.3d 687, 694–95 (2d Cir.1998) (quoting *Pennzoil,* 481 U.S. at 25, 107 S.Ct. 1519 (Marshall, J., concurring)). Thus, according to the Tenth Circuit, even where a plaintiff mounts what is termed as a general challenge to a state procedure, if he only seeks to "undo" a prior state judgment, then his claim is barred by *Rooker–Feldman. Kenmen Engineering v. City of Union,* 314 F.3d 468, 477 (10th Cir.2002).

Plaintiff, by his own admission, extensively litigated the constitutional questions surrounding the *pendente lite* scheme at

---

**2.** The State offers two other grounds for dismissal: Plaintiff's lack of standing and collateral estoppel. Deft. Memo at 5–9. Because "the *Rooker–Feldman* doctrine affects the threshold issue of the district court's subject matter jurisdiction," *Mitchell v. Fishbein,* 377 F.3d 157, 165 (2d Cir.2004), it is considered first. Because this issue is also dispositive, there is no need to reach the State's other arguments.

every level in the state court system before to filing the present claim.[3] The New York courts could thus not have affirmed the judgment against Plaintiff without implicitly affirming the constitutionality of the state trial court's pendente lite order.[4] By definition, then, this issue was decided by the state court, and relief in the present case can only be predicated on undoing an error in the state courts.[5]

In determining whether a plaintiff seeks to challenge a state law generally, or seeks to "undo" a state adjudication, it is also helpful to consider whether the relief he seeks is retrospective or prospective. The Third Circuit has explicitly explained that *Rooker–Feldman* does not apply where a federal claimant seeks only *prospective* relief from an allegedly unconstitutional state procedure, and "does not request the district court to interfere in any way" with a prior state decision or with the enforcement of that decision. "[S]uch relief, if granted, could affect future decisions of the state supreme court, [but] it would not require review of a past decision." *Centifanti v. Nix,* 865 F.2d 1422, 1430 (3d Cir. 1989).

In *Feldman* itself, the plaintiffs sought to take the District of Columbia bar examination, but were barred from doing so under a rule promulgated by the D.C. Court of Appeals allowing only graduates of accredited law schools to sit for the examination. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 463–66, 470–71, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The plaintiffs brought suit against the court in federal district court, seeking *both* a declaration that the defendants' actions were unconstitutional, *and* injunctive relief permitting them to sit for an *upcoming* bar examination. *Id.* at 468–69, 472–73, 103 S.Ct. 1303. The Supreme Court concluded that a federal court could properly consider the plaintiffs' general challenge to the constitutionality of the local bar rules, as they "do not necessarily require a United States District Court to review a final state court judgment in a judicial proceeding." *Id.* at 485–86, 103 S.Ct. 1303. Thus, *Feldman* allowed a general challenge to the constitutionality of the District of Columbia's bar examination procedures—but it did so in order to allow the plaintiffs to take the bar examination *in the future,* not to reverse any past decision denying their admission to the bar exam. *Feldman,* 460 U.S. at 469, 473, 487, 103 S.Ct. 1303.

The Tenth Circuit applied similar logic in finding that *Rooker–Feldman* barred a

**3.** While it is not clear that Plaintiff made the exact same arguments at the various state levels, a state plaintiff cannot "reserve" some of his federal claims to later defeat collateral estoppel or *Rooker–Feldman* in a federal court. See *Hickerson v. City of New York,* 146 F.3d 99, 110–12 (2d Cir.1998).

**4.** Plaintiff complains that "no court therein has addressed with any specificity whatsoever the merit of the rational argument put forth and mountain of legal authority supporting said constitutional challenge." Complaint at ¶ 11. But the brevity of a state court's opinion will not prevent application of *Rooker–Feldman. ITT Corp. v. Intelnet Int'l Corp.,* 366 F.3d 205, 212–13 (3d Cir.2004). "[I]f a state court considers and rejects a constitu-

tional claim on the merits, a paucity of explicit analysis in the court's opinion will not strip the holding of its validity for purposes of *Rooker–Feldman's* jurisdictional bar." *Gulla v. N. Strabane Township,* 146 F.3d 168, 172 (3d Cir.1998). The Third Circuit has noted that in *Feldman* itself, the state court's per curiam order adjudicated the plaintiff's constitutional claims summarily, without even referring to each of the claims. But because the decision was "overarching," and "implicitly den[ied] all of his legal claims," it was sufficient to invoke the doctrine. *Id.*

**5.** Compare *Hachamovitch,* 159 F.3d at 695 (finding no *Rooker–Feldman* bar to constitutional claim that succeeds only if state court's legal interpretation was *correct*).

plaintiff's federal claims in *Kenmen Engineering v. City of Union*, 314 F.3d 468 (10th Cir.2002): it focused on the fact that "the injury for which plaintiffs seek redress is not the possibility of Union City applying its municipal fire code against them in the *future*. Rather, plaintiffs seek damages for Union City's *past* application of its municipal fire code—an application sanctioned in a prior state-court judgment." *Id.* at 477 (emphases added).

In this case, the relief sought by Plaintiff is essentially retrospective: relief from a past judgment ordered against him by the state courts. Prospective lawyers can sit for a subsequent bar examination; a business can face future zoning compliance proceedings; but there is no suggestion when, if ever, Plaintiff will remarry, then divorce, and then suffer another *pendente lite* judgment. Rather, Plaintiff complains of ongoing burdens resulting from the past judgment against him, see Complaint generally, and at ¶¶ 109–10, and argues that he intends to return to state court with a "general declaration of unconstitutionality" obtained here, and "seek modification of the judgment against him." Plaintiff cites no authority suggesting that this is permitted under *Rooker–Feldman*, and would not amount to an attempt to retrospectively undo the state adjudication of his claims.

B. *Plaintiff's claims are also "inextricably intertwined" with his state proceedings under the Second Circuit's preclusion analysis.*

The Second Circuit has stated that *Feldman's* "inextricably intertwined" clause (at 460 U.S. at 482 n. 16, 103 S.Ct. 1303), "means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding ..., subse-

quent litigation will be barred under the *Rooker–Feldman* doctrine if it would be barred under principles of preclusion." *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 199–200 (2d Cir. 1996). If a suit or claim would be barred in state court by either claim preclusion[6] or issue preclusion, *Rooker–Feldman* prevents the federal court from asserting subject matter jurisdiction. *Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir.2004). In this case, application of issue preclusion (or collateral estoppel) factors indicates that Plaintiff's claims would be precluded from relitigation in New York's courts. For this reason as well, the *Rooker–Feldman* Doctrine applies to bars Plaintiff's present claims.

Under New York law, issue preclusion occurs if (1) the "issue in question was actually and necessarily decided in a prior proceeding," and (2) "the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d. Cir.1995) (citing, *inter alia, Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455, 492 N.Y.S.2d 584, 482 N.E.2d 63 (1985)). The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination, whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action. *Colon*, 58 F.3d at 869 (citing *Kaufman*, 492 N.Y.S.2d at 588–89, 482 N.E.2d 63).

1. *The state courts actually and necessarily decided the issue in question.*

As mentioned, Plaintiff's own complaint acknowledges that the constitutional issues

---

**6.** The State has not raised or argued the issue of whether claim preclusion (or res judicata) applies to this case, and the issue therefore

need not be considered. See *Scherer v. Equitable Life Assurance Society of U.S.*, 347 F.3d 394, 398 & n. 4 (2d. Cir.2003).

in this action were "duly brought" before the state courts. Complaint at ¶ 11. However, he argues that there is no identity of issues between his state and federal cases, because "in the state proceeding, plaintiff was arguing a 'specific grievance' and sought 'specific relief' from the state court," whereas "[t]his action is a 'general' not 'specific' challenge to the subject statutory scheme." Pltf. Memo at 11–12. As discussed above, Plaintiff's general constitutional claims *were* brought before the state court. Moreover, even assuming that Plaintiff is seeking a different remedy in the present case, "requested remedies need not remain the same in order for issue preclusive effect to be given [to] a prior determination." *Plough v. W. Des Moines Cmty. Sch. Dist.*, 70 F.3d 512, 516 (8th Cir.1995) (citing *U.S. v. Utah Constr. & Mining Co.*, 384 U.S. 394, 418, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)). Plaintiff cites no authority to the contrary.

### 2. *Plaintiff had a full and fair opportunity to litigate the issue.*

Plaintiff argues that he was denied a full and fair opportunity to litigate his constitutional issues in state court.[7] Determination of a full and fair opportunity to litigate an issue involves consideration of "the nature of the forum and the importance of the claim in the prior litigation, ... the incentive to litigate, the competence of counsel, the availability of new evidence and any differences in the applicable law and the foreseeability of future litigation." *Banks v. Person*, 49 F.Supp.2d 119, 128 (E.D.N.Y.1999) (citing *Ryan v. New York*

*Tel. Co.*, 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984)). Based on these factors, Plaintiff does not meet his burden of proving that he lacked a full and fair opportunity to litigate.

#### a. *The Nature of the Prior Forum*

Plaintiff argues that he lacked a full and fair opportunity to litigate in state court because the nature of that forum "is 'suspect' and not an impartial and disinterested tribunal as required for the proper protections afforded litigants under the 14th Amendment's due process clause." Pltf. Memo at 16. This argument falls short.

It is true, as Plaintiff insists, that "[a] fair trial in a fair tribunal is a basic requirement of due process," and that "[f]airness of course requires an absence of actual bias in the trial of cases." *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). Pltf. Memo at 16. And the Supreme Court has noted that "even when issues have been raised, argued, and decided in a prior proceeding, and are therefore preclusive under state law," their redetermination may be warranted " 'if there is reason to doubt the quality, extensiveness, or fairness of the procedures followed in prior litigation.' " *Haring v. Prosise*, 462 U.S. 306, 317–18, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983) (quoting *Montana v. U.S.*, 440 U.S. 147, 164 n. 11, 99 S.Ct. 970, 59 L.Ed.2d 210) (1979). But a plaintiff cannot meet his burden of showing the lack of a full and fair opportunity to litigate a prior action through a "bare conclusory allegation." *Samhammer v. Home Mut. Ins. Co. of*

---

**7.** This argument actually comes in response to the State's separate, but related argument for dismissal on collateral estoppel grounds, and not in the context of a *Rooker–Feldman* analysis. Deft. Memo at 7–9; Pltf. Memo at 10–17. As noted previously at note 1, *infra*, this decision does not reach the State's collateral estoppel argument. However, because

the doctrines of *Rooker–Feldman* and collateral estoppel are so closely related, Plaintiff's argument can properly be applied and considered here, under the *Rooker–Feldman* rubric instead. See generally 18B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4469.1 (2d ed.2002).

*Binghamton,* 120 A.D.2d 59, 507 N.Y.S.2d 499, 502 (N.Y.App.Div.1986). Rather, the plaintiff must "point[ ] to specific instances from which it can be concluded that the proceeding ... or its decision, was fundamentally unfair." *Id.*

Plaintiff does not allege any specific incidents indicating that his state court proceedings were unfair. Instead, he alleges simply that the state courts are "clearly unwilling to protect the fundamental rights of due process and equal protection of citizens who are subjected to the unconstitutional statutory scheme because the state has a vested interest in maintaining said scheme." Pltf. Memo at 17. This sort of "bare conclusory allegation" is clearly insufficient to meet Plaintiff's burden of proving that he was denied a full and fair litigation opportunity in state court.[8]

### b. *The Foreseeability of Future Litigation*

Plaintiff also argues that he lacked a full and fair litigation opportunity in state court based on the "considerable foreseeability of future litigation." Pltf. Memo at 16. According to Plaintiff, "if this miscarriage of justice does not come to constitutionally correct closure, the 'foreseeability of future litigation' is well beyond substantial. It is absolutely guaranteed." *Id.* Plaintiff fundamentally misunderstands the significance of this issue in the collateral estoppel context.

The "foreseeability of future litigation" is not, as Plaintiff insinuates, a club to be used by a claimant to threaten *future* litigation if his present case, and a dispositive collateral estoppel inquiry, are resolved in the defendant's favor. Rather, the foreseeability of future litigation refers to whether the *defendant* in a *past* case should have expected to face additional lawsuits over an issue litigated in that case. Greater foreseeability of subsequent claims regarding that issue implies greater efforts on the defendant's part to fully litigate the issue in the first instance. See generally 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4424 (2d ed.2002). Thus, a high foreseeability of future litigation generally weighs *in favor of* collateral estoppel, not against it. This issue is closely related to the "incentive to litigate" element of the "full and fair opportunity to litigate" inquiry,[9] and Plaintiff, by his plain admission, "had the incentive to litigate" his constitutional claims in state court. Pltf. Memo at 16. The foreseeability of future litigation thus weighs in favor of precluding Plaintiff's claims, and applying the *Rooker–Feldman* doctrine.

---

**8.** Plaintiff more fully expounds upon his claims of state court bias in a separate section of his opposition memorandum (discussed *infra,* at 17), in which he argues for an exception to the *Rooker–Feldman* doctrine. But at no point does he point to any specific instance where a state court prevented him from fully and fairly litigating his claims. Pltf. Memo. at 6–10.

**9.** Wright, Miller, and Cooper have stated:

The most general independent concern reflected in the limitation of issue preclusion by the full and fair opportunity requirement goes to the incentive to litigate vigorously in the first action. The stakes in the first action may be so small that extensive effort is not reasonable if the risk is limited to the first action. Few noninstitutional litigants would spend $50,000 to defend a $5,000 claim, unless there is reason to foresee that the same issues may arise in future litigation for more substantial stakes. Denial of preclusion on this score may thus be tied closely to concern with the foreseeability of later litigation involving the same issue.

18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4423 (2d ed.2002).

**C.** *Plaintiff's claimed exception to Rooker–Feldman does not control.*

Plaintiff argues that even if his claims are generally of the sort barred under *Rooker–Feldman*, his case fits within an exception to the doctrine allegedly articulated by the Seventh Circuit in *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir.1995). *Nesses* suggests that where a plaintiff claims that a state court's decision "violated some independent right of his, such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics," he can bring suit in federal court without being barred by *Rooker–Feldman*. *Id.* at 1005. Plaintiff alleges, in purely conclusory fasion,[10] that "the state court was biased and/or corrupted by a vested interest in the outcome of this case." Pltf. Memo at 7. Accordingly, Plaintiff claims, *Rooker–Feldman* is inapplicable to this case. *Id.*

*Nesses* was decided on the basis of res judicata, not *Rooker–Feldman*. *Nesses*, 68 F.3d at 1004. The language cited by Plaintiff is thus dicta, and need not govern this decision. Moreover, the Second Circuit has never adopted *Nesses* or its reasoning, and *Nesses* thus need not be applied in the present case to prevent application of *Rooker–Feldman*.

**D.** *Rooker–Feldman: summary*

Under the *Rooker–Feldman* doctrine, Plaintiff's claims are simply not within this Court's subject matter jurisdiction. These claims fundamentally seek to undo, and are inextricably intertwined with, the essence of a state court adjudication. Plaintiff's only recourse is therefore to the United States Supreme Court, not a United States District Court.

10. See discussion *supra,* at 291 and note 8.

**III.** *Dismissal of Plaintiff's Claims Moots His Request for Class Certification*

Plaintiff's memorandum opposing to the State's dismissal motion includes an informal request to amend his complaint to include additional plaintiffs and obtain class certification. Pltf. Memo at 14–15. Plaintiff has also submitted affidavits from other New York residents allegedly harmed by the State's *pendente lite* system in the course of divorce proceedings. The State's reply memorandum opposes this request as untimely, and notes that it is unnecessary, since a judgment finding in favor of Plaintiff's constitutional claims "would necessarily apply to anyone affected by the nullified statute, thus negating the need for a certified class." Deft. R. Memo at 4–5.

Because Plaintiff's claims are barred on jurisdictional grounds and dismissed herein, his request for class certification is rendered moot. See *Stewart v. Baltimore Teachers Union*, 243 F.Supp.2d 377, 378 n. 1 (D.Md.2003); *Gaffney v. U.S.*, 834 F.Supp. 1, 5 (D.D.C.1993); and *Christos v. U.S.*, 48 Fed.Cl. 469, 479 & n. 24 (2000).

### CONCLUSION

For the reasons discussed above, the Defendants' motion to dismiss is GRANTED. The Clerk of Court is accordingly ordered to close this case.

SO ORDERED.