Stephen MOCCIO, Plaintiff–Appellant,

v.

**NEW YORK STATE OFFICE OF COURT ADMINISTRATION,** Defendant–Appellee.

**No. 1024, Docket 95–7826.**

United States Court of Appeals, Second Circuit.

Sept. 9, 1996.

Michael H. Sussman, Goshen, NY, for Plaintiff–Appellant.

John Eiseman, New York City (Michael Colodner, Kenneth Falk, Office of Court Administration, on the brief), for Defendant–Appellee.

Before: WALKER, MCLAUGHLIN, and LEVAL, Circuit Judges.

WALKER, Circuit Judge:

Plaintiff Stephen Moccio appeals from an order of the United States District Court for the Southern District of New York (Charles L. Brieant, *District Judge* ), that dismissed his claims under 42 U.S.C. § 1983 *sua sponte* pursuant to *Rooker v. Fidelity*

*Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The so-called *Rooker–Feldman* doctrine, generally stated, is that inferior federal courts have no subject matter jurisdiction over cases that effectively seek review of judgments of state courts and that federal review, if any, can occur only by way of a certiorari petition to the Supreme Court. We conclude that Moccio's § 1983 claims are plainly barred by the *Rooker–Feldman* doctrine and we affirm the judgment of the district court.

## BACKGROUND

Plaintiff Stephen Moccio was employed by defendant New York State Office of Court Administration (the "OCA") as a Senior Court Officer in the Westchester County Court. In December 1991, the OCA brought disciplinary charges against Moccio that alleged, among other things, that on numerous occasions he had left his assigned post without permission, carried an automatic weapon and an unregistered revolver to work in violation of court rules, and cursed and yelled at his supervisors. In March 1992, after a hearing at which Moccio both presented testimony and cross-examined witnesses, an OCA hearing officer sustained most of the charges and recommended that Moccio be terminated. A deputy chief administrative judge thereafter reviewed all of the testimony and evidence that had been introduced at the hearing before the hearing officer and ordered Moccio dismissed.

In September 1992, Moccio filed a petition in the Supreme Court under N.Y. CPLR Article 78, seeking to vacate the decision of the administrative judge. Pursuant to N.Y. CPLR 7804(g), the action was transferred to the Appellate Division, which dismissed the petition and upheld Moccio's termination. *Moccio v. State,* 200 A.D.2d 574, 606 N.Y.S.2d 300 (2d Dep't 1994); see also *Giakoumelos v. Coughlin,* 88 F.3d 56, 57 (2d Cir.1996) (case transferred to Appellate Division because it involved issue of whether administrative determination was supported by substantial evidence). Moccio did not

seek leave to appeal to the New York Court of Appeals.

On May 12, 1995, Moccio brought this action pursuant to 42 U.S.C. § 1983 in the United States District Court for the Southern District of New York. In his complaint, Moccio alleged that his termination violated his constitutional rights under the Fourteenth Amendment because (a) the OCA, having failed to propound standards guiding and regulating its discretion in terminating permanent employees, violated the Due Process Clause by exercising its discretion in an arbitrary and capricious fashion, and (b) the OCA violated the Equal Protection Clause by selectively sanctioning him for his conduct while failing to prosecute other officers for more serious behavior. During a status conference on July 24, 1995, the district court dismissed the complaint *sua sponte* on the ground that Moccio's claims were barred by the *Rooker–Feldman* doctrine. Moccio now appeals.

## DISCUSSION

A challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction, *Gentner v. Shulman*, 55 F.3d 87, 89 (2d Cir.1995), and may be raised at any time by either party or *sua sponte* by the court, *Ritter v. Ross*, 992 F.2d 750, 752 (7th Cir.1993), *cert. denied*, 510 U.S. 1046, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994). We review de novo the district court's determination that, as a matter of law, jurisdiction did not exist. *Charchenko v. City of Stillwater*, 47 F.3d 981, 982–83 (8th Cir.1995); *Narey v. Dean*, 32 F.3d 1521, 1524 (11th Cir.1994); *see also Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1016–17 (2d Cir.1991).

In *Rooker*, the petitioner sued in the district court to have the judgment of an Indiana state court declared null and void because the judgment violated the Contract Clause of the Constitution and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. 263 U.S. at 414–15, 44 S.Ct. at 150. In affirming the district court's dismissal for lack of jurisdiction, the Supreme Court held that, within the federal judiciary, only the Supreme Court could entertain an appeal to reverse or modify a state court judgment. *Id.* at 415–16, 44 S.Ct. at 150.

Sixty years later, the Supreme Court reaffirmed this rule. In *Feldman*, the district court held that it was without jurisdiction over the claims of the plaintiffs that the denial of their applications for admission to the District of Columbia Bar violated the Fifth Amendment and the Sherman Act. 460 U.S. at 468–70, 103 S.Ct. at 1307. In affirming this holding, the Supreme Court held that the district court did not have jurisdiction to hear any challenge to the judicial determinations—including admission to the bar—of the District of Columbia Court of Appeals (the analogue to a state court in the District of Columbia). *Id.* at 476–79, 103 S.Ct. at 1311–13. The Court drew a distinction between a challenge to a rule for admission promulgated by a state court and a challenge to a judgment of a state court applying the rule. In the case of the former, the district court would have jurisdiction because the promulgation of a rule for admission to the bar is a nonjudicial act by the state court. *Id.* at 482–85, 103 S.Ct. at 1314–16; *see Campbell v. Greisberger*, 80 F.3d 703, 707 (2d Cir.1996). The Court also held that to the extent that the plaintiff's claims were "inextricably intertwined" with the state court's determinations, the federal district court did not have jurisdiction. *Feldman*, 460 U.S. at 482–84 n. 16, 103 S.Ct. at 1316 n. 16; *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1144 (2d Cir.1986), *rev'd on other grounds*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

Since *Feldman*, the Supreme Court has provided us with little guidance in determining which claims are "inextricably intertwined" with a prior state court judgment and which are not. *But see Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 24–26, 107 S.Ct. 1519, 1530, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring) (applying *Rooker–Feldman* ). The result has been inconsistency in the lower federal courts faced with challenges based upon the *Rooker–Feldman* doctrine. *See* Gary Thompson, Note, *The Rooker–Feldman Doctrine & the Subject Matter Jurisdiction of Federal District Courts*, 42 Rutgers L.Rev. 859, 880–84 (1990). If the precise

claims raised in a state court proceeding are raised in the subsequent federal proceeding, *Rooker–Feldman* plainly will bar the action. On the other hand, we have held that where the claims were never presented in the state court proceedings and the plaintiff did not have an opportunity to present the claims in those proceedings, the claims are not "inextricably intertwined" and therefore not barred by *Rooker–Feldman*. *Texaco*, 784 F.2d at 1144-45.

Moccio's case, however, falls somewhere between these extremes. Although Moccio contends that he never raised these precise constitutional claims in the Article 78 proceeding (which we assume to be the case), it cannot be doubted that he could have raised these federal constitutional claims in that proceeding. A petitioner may not challenge the validity of a legislative act or regulation in an Article 78 proceeding but may raise a claim that the administrative application of a rule to him is unconstitutional. *See Save the Pine Bush, Inc. v. City of Albany*, 70 N.Y.2d 193, 202, 518 N.Y.S.2d 943, 512 N.E.2d 526 (1987); *see also Daily Star v. Board of Trustees*, 164 A.D.2d 531, 533, 564 N.Y.S.2d 848 (3d Dep't 1991). In his federal complaint, Moccio does not attack the constitutionality of any law or regulation of either the New York Legislature or the OCA, but instead challenges the application of those rules to him in his particular case. Moccio properly could have raised these same constitutional claims in the Article 78 proceeding. The specific question we must answer, therefore, is whether Moccio, having failed to raise these constitutional claims in the state court proceeding where he was afforded the opportunity to do so, is barred by the *Rooker–Feldman* doctrine from raising the claims in the district court.

Commentators have generally taken the view that the *Rooker–Feldman* doctrine is at least coextensive with the principles of res judicata ("claim preclusion") and collateral estoppel ("issue preclusion"). One set of commentators, for instance, has noted that the effect of the *Rooker–Feldman* doctrine has been to "transform[ ] res judicata [and collateral estoppel] doctrine[s] into [rules] that lower federal courts lack jurisdiction to review state courts." 18 Wright, Miller & Cooper, *Federal Practice & Procedure* § 4469, at 663–64 (1981);[1] *see also* Thompson, *supra*, at 910 ("In sum, Supreme Court cases, circuit court cases and commentary all support the conclusion that there is full overlap between the *Rooker–Feldman* doctrine and preclusion."). Another commentator has viewed the *Rooker–Feldman* doctrine as even reaching beyond those situations in which the federal action is precluded by res judicata or collateral estoppel. *See* Jack M. Beermann, *Government Official Torts & the Takings Clause*, 68 B.U. L.Rev. 277, 341 (1988) ("The Supreme Court ... has extended its reasoning in the *Rooker–Feldman* doctrine beyond preclusion rules, which may vary from state to state ...." (footnote omitted)). Several of our sister circuits have also reached the conclusion that *Rooker–Feldman* is at least coextensive with res judicata and collateral estoppel. *See Charchenko*, 47 F.3d at 983 n. 1 (8th Cir.) ("We note that *Rooker–Feldman* is broader than claim and issue preclusion because it does not depend on a final judgment on the merits. Aside from this distinction the doctrines are extremely similar."); *Valenti v. Mitchell*, 962 F.2d 288, 297 (3d Cir.1992) ("[T]he *Rooker–Feldman* doctrine has a close affinity to the principles embodied in the legal concepts of claim and issue preclusion."). *But see Garry v. Geils*, 82 F.3d 1362, 1367–68 (7th Cir.1996) (distinguishing between *Rooker–Feldman* and preclusion); *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir.1993) (same).

We agree that the Supreme Court's use of "inextricably intertwined" means, at a minimum, that where a federal plaintiff had

---

1. Wright uses the phrase res judicata to refer to both claim preclusion (traditional res judicata) and issue preclusion (traditional collateral estoppel). *See* 18 Wright, Miller & Cooper, *supra*, § 4402, at 6 ("[T]he broad 'res judicata' phrase refers to the distinctive effects of a judgment separately characterized as 'claim preclusion' and 'issue preclusion.' "). Because there is an important distinction between those concepts for our purposes, as we discuss below, we adhere to the traditional use of the terms "res judicata" (or claim preclusion) and "collateral estoppel" (or issue preclusion).

an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion. *See also Pennzoil,* 481 U.S. at 25, 107 S.Ct. at 1533 (Marshall, J., concurring) ("[T]he federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it."); *Gauthier v. Continental Diving Servs.,* 831 F.2d 559, 561 (5th Cir.1987) (declining to apply the *Rooker–Feldman* doctrine any more broadly than state preclusion principles); *Robinson v. Ariyoshi,* 753 F.2d 1468, 1472 (9th Cir. 1985) (viewing the *Rooker–Feldman* doctrine and preclusion principles as "two sides of the same coin"), *vacated on other grounds,* 477 U.S. 902, 106 S.Ct. 3269, 91 L.Ed.2d 560 (1986). Accordingly, we decide whether the *Rooker–Feldman* doctrine applies to Moccio's claims by turning to preclusion principles.

■ The law of preclusion can be divided into two branches: res judicata (claim preclusion) and collateral estoppel (issue preclusion). *See* 18 Wright, Miller & Cooper, *supra,* § 4402, at 6. Res judicata does not apply to Moccio's action. *See Colon v. Coughlin,* 58 F.3d 865, 870 n. 3 (2d Cir.1995) (res judicata does not bar a § 1983 action where the plaintiff has previously brought an Article 78 proceeding). Collateral estoppel, however, does apply to § 1983 actions. See *Giakoumelos v. Coughlin,* 88 F.3d 56, 58 (2d Cir.1996). Under New York law, collateral estoppel will apply only if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Colon,* 58 F.3d at 869.

In the first place, issues essential to both causes of action that Moccio brought under § 1983 were actually and necessarily decided adversely to Moccio in the Article 78 proceeding. Moccio's federal court procedural due process claim has gone through several different formulations during this litigation, but none of them are cognizable. Moccio alleges in his complaint that the OCA violated his right to due process "[b]y failing to propound standards regulating its discretion in terminating persons from permanent employment." Complaint at 4. We have held previously, however, that to prevail under a procedural due process claim, a plaintiff must show that the "procedural safeguards ... established by the state are insufficient to protect her rights." *Valmonte v. Bane,* 18 F.3d 992, 1002 (2d Cir.1994). In this case, among the safeguards provided by the state to Moccio was the Article 78 proceeding itself. Thus, to conclude that Moccio was deprived of due process by the termination proceedings, we would necessarily have to conclude that the protections offered to him by the Article 78 proceeding were insufficient to satisfy constitutional due process. Such a finding would run directly contrary to the prohibition in *Feldman* against lower federal court jurisdiction over "challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Feldman,* 460 U.S. at 486, 103 S.Ct. at 1317.

■ Seeking to avoid dismissal, Moccio argues that his federal court due process claim is not limited to his particular termination, but instead is a general challenge that "attacks the lack of any standards governing state agency disciplinary action." Appellant's Brief at 5. We agree with Moccio that the *Rooker–Feldman* doctrine permits federal courts to entertain such general claims. *See Feldman,* 460 U.S. at 486, 103 S.Ct. at 1316–17. The problem with Moccio's argument, however, is that no such general claim is before us. *See Charchenko,* 47 F.3d at 983 (looking to the relief requested by the plaintiff in determining whether his claim is barred). While Moccio's complaint alleges that the OCA's procedures are inadequate, he does not ask for a ruling to that effect, nor does he ask for equitable or declaratory relief that would forestall the application of termination proceedings against him. Thus, we need not address this post hoc attempt to state a cause of action.

■ Moccio's complaint does allege that his termination violates the Due Process

Clause because the OCA used the discretion it is given "in an arbitrary and capricious fashion." Complaint at 4. But even this narrow claim is barred by *Rooker–Feldman* because it was necessarily decided in the Article 78 proceeding. Moccio himself admits in his reply brief that the focus of the Article 78 proceeding was whether the "OCA's decision was arbitrary, capricious or contrary to law," Appellant's Reply Brief at 3, and the Appellate Division explicitly found that there was substantial evidence to support the administrative judge's determination, *see Moccio,* 200 A.D.2d at 574, 606 N.Y.S.2d 300.[2] Thus, the issue in the Article 78 proceeding— whether the OCA acted in an arbitrary and capricious fashion—is the precise issue that Moccio seeks to raise in his instant due process claim.

■■■■■ Moccio's second federal cause of action, which states that "[b]y failing to treat him like similarly-situated persons and by subjecting him to such harsh sanction . . . [the OCA] violated the equal protection clause of the Fourteenth Amendment," fares no better under *Rooker–Feldman.* Complaint at 4. Moccio does not allege that the OCA's classification of him was along suspect lines, nor does he allege that any of his fundamental rights have been impaired. Therefore, his termination must be upheld under the Equal Protection Clause if "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993); *see Marbley v. Bane,* 57 F.3d 224, 231 (2d Cir.1995). As long as there is any reasonably conceivable state of facts that could provide the rational basis for the

OCA's decision, it will not violate the Equal Protection Clause. *Heller,* 509 U.S. at 320, 113 S.Ct. at 2642–43. In this case, the Appellate Division explicitly held that Moccio's termination "is not so disproportionate to these offenses as to be shocking to one's sense of fairness." *Moccio,* 200 A.D.2d at 574, 606 N.Y.S.2d 300 (citing *Pell v. Board of Educ.,* 34 N.Y.2d 222, 356 N.Y.S.2d 833, 313 N.E.2d 321). This states nothing more than that there is a rational relationship between the OCA's decision to terminate Moccio and the actions in which he was found by the hearing officer to have engaged: the precise issue he has asked the district court to decide. Therefore, the second cause of action also would require the district court to decide an issue that was previously decided adversely to Moccio.

■■■■■ The second prong of the collateral estoppel test—whether Moccio had a full and fair opportunity to litigate in the Article 78 proceeding the issues he now raises—is also met as to both of his federal causes of action. The burden to show the absence of such a full and fair opportunity rests with Moccio. *See Colon,* 58 F.3d at 869. On appeal, Moccio alleges in conclusory fashion that he was denied a full and fair opportunity to litigate these issues because he "could not reasonably obtain or place before the administrative officer evidence . . . that he was being subjected to disparately harsh treatment." Appellant's Reply Brief at 10. However, as Moccio himself concedes, he was given the opportunity before the hearing officer and the administrative judge to show that "other officers [ (a) who] had disrespected superiors and disobeyed orders and (b) who had engaged in fighting so severe as to cause

---

2. Under New York law, "arbitrary and capricious" is the standard of review in an Article 78 mandamus to review proceeding. *See Scherbyn v. Wayne–Finger Lakes Bd. of Coop. Educ. Servs.,* 77 N.Y.2d 753, 757–58, 570 N.Y.S.2d 474, 573 N.E.2d 562 (1991). The Article 78 proceeding in this case, however, was a certiorari proceeding because it involved a quasi-judicial hearing, and therefore the standard of review was "substantial evidence." *See id.* at 757, 570 N.Y.S.2d 474, 573 N.E.2d 562. Because the two proceedings are similar and the gravamen under both standards is whether the challenged administrative decision was rational, we see no practical difference between the two, at least in the instant case. *Com-*

*pare 300 Gramatan Ave. Assocs. v. State Div. of Human Rights,* 45 N.Y.2d 176, 182, 408 N.Y.S.2d 54, 379 N.E.2d 1183 (1978) (in certiorari proceeding, issue is whether there was a rational basis for the facts as found by the agency), *with Pell v. Board of Educ.,* 34 N.Y.2d 222, 231, 356 N.Y.S.2d 833, 313 N.E.2d 321 (1974) (in mandamus to review proceeding, issue is whether there was a rational basis for the decision); *see also 125 Bar Corp. v. State Liquor Auth.,* 24 N.Y.2d 174, 178–79, 299 N.Y.S.2d 194, 247 N.E.2d 157 (1969) (The two standards are "often indistinguishable . . . except that competent common-law evidence is not required" in a mandamus to review proceeding.).

one to be hospitalized after part of his finger was bitten off were not disciplined in any manner and were permitted to maintain their weapons." Appellant's Reply Brief at 6. Under New York law, the determination of whether there was a full and fair opportunity to litigate requires that we consider, among other things, the size of the claim in the prior proceeding, the forum of the prior proceeding, the extent of the prior litigation, and the availability of evidence now that was not available at the time of the prior proceeding. *Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 72, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969).

■ Moccio was a full participant, was represented by counsel, and had the opportunity to present evidence in the Article 78 proceeding. Moccio argues that he nonetheless was denied a full and fair opportunity to litigate these issues because there is a general rule of no discovery in a state agency disciplinary hearing and that, therefore, he was unable to produce documentary evidence to demonstrate that he was treated differently than similarly-situated officers. But as Moccio has admitted, he did present his own testimony to the effect of such a difference and we do not think that the general inability to obtain in the Article 78 proceeding all the discovery he might be entitled to in federal court is sufficient, at least in this case, to diminish the full and fair opportunity he had to litigate these issues in the Article 78 proceeding. Indeed, a petitioner in an Article 78 proceeding, such as Moccio, is permitted to submit, in addition to the petition, affidavits and other written proof, and where a triable issue of fact is raised, the petitioner may obtain a trial. *See* N.Y. CPLR 7804(d) & (h). Because Moccio had ample opportunity to litigate these issues, we find that Moccio's causes of action are barred under the *Rooker–Feldman* doctrine.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.