**Derrick COLEMAN, Plaintiff,**

v.

**George E. PATAKI, et al., Defendants.**

No. 04–CV–6062.

United States District Court,
W.D. New York.

Feb. 17, 2004.

Derrick Coleman, Orleans Correctional Facility, Albion, NY, pro se.

Charles D. Steinman, New York State Attorney General's Office, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, District Judge.

Plaintiff, Derrick Coleman, appearing *pro se,* commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), has sued New York State Governor George E. Pataki in his individual and official capacities, alleging that plaintiff's constitutional rights have been violated by the "freezing" of certain sums of money in plaintiff's inmate account pursuant to New York's "Son of Sam" law ("SOS law"), N.Y. Exec. L. § 632(a).[1] Defendant has moved to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. For the reasons that follow, defendant's motion is granted.[2]

## FACTUAL BACKGROUND

An understanding of plaintiff's claims requires some familiarity with the SOS law. In June 2001, the New York State Legislature amended the SOS law by expanding the ability of crime victims to recover monies from persons convicted of crimes. For example, whereas the pre-amendment statute covered "profits of a crime" possessed by a convict, the law now covers all "funds of a convicted person," regardless of source. N.Y. Exec. L. § 632–a(1)(c). In addition, the amendments require any entity making payment to a convicted person of such funds in excess of $10,000 to notify the Crime Vic-

1. A second defendant, Joan A. Cusack, the Chair of the New York State Crime Victims Board, has never been served in this action.

2. Plaintiff has also moved for reconsideration of the Court's December 23, 2004 Order denying plaintiff's motion for a preliminary injunction. The motion for reconsideration is denied.

tims Board ("CVB") of the payment. N.Y. Exec. L. § 632–a(2)(a). The CVB will then, in turn, notify all known crime victims of the existence of funds of a convicted person. N.Y. Exec. L. § 632–a(2)(c). Thereafter, the CVB is permitted to attach or apply for provisional remedies against the funds upon notice that a crime victim intends to file a civil action for damages. N.Y. Exec. L. § 632–a(4). The statute of limitations for filing such actions was also extended to three years from the date of discovery of any funds of a convicted person, thus reviving some previously time-barred actions. N.Y. Exec. L. § 632–a(3).

The complaint in this action alleges that plaintiff was convicted of attempted murder in 1995. Complaint ¶ 3. In 2001, while he was incarcerated at Wende Correctional Facility, plaintiff received certain checks from a number of sources, totaling over $13,000. Complaint ¶¶ 4–6.

In June 2002, the victim of plaintiff's crime commenced an action against him in state court. A default judgment was entered against plaintiff in December 2002, and the court awarded the plaintiff in that case $1,465,700 in damages. Complaint ¶¶ 14–18. DOCS has now "frozen" plaintiff's inmate account so that the funds contained therein may be used to satisfy the judgment against him.

In this action, plaintiff contends that the SOS law, as amended in 2001, violates his constitutional rights in a number of respects. In particular, he alleges that the amended statute constitutes an impermissible bill of attainder, see U.S. Const. art. I, § 10, and an ex post facto law, see id., and that it violates his right to due process. He seeks an order enjoining defendant from enforcing the SOS law against plaintiff, and directing that the "freeze" on

plaintiff's inmate account be lifted. He also seeks a declaration that the SOS law is unconstitutional, and what he terms "injunctive" relief for "reinbursement" [sic] in the amount of $356.84, although it is not clear what that "reimbursement" would be for.[3]

## DISCUSSION

Defendant contends that the complaint should be dismissed under the Rooker–Feldman doctrine, which generally precludes federal courts (other than the Supreme Court) from exercising jurisdiction over cases that effectively seek review of state court judgments. See D.C. Court of Appeals v. Feldman, 460 U.S. 462, 486–87, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923). I agree.

Under the Rooker–Feldman doctrine, "inferior federal courts lack subject matter jurisdiction 'over cases that effectively seek review of judgments of state courts and ... federal review, if any, can occur only be way of a certiorari petition to the Supreme Court.'" Phifer v. City of New York, 289 F.3d 49, 55 (2d Cir.2002) (quoting Moccio v. N.Y. State Office of Court Admin., 95 F.3d 195, 197 (2d Cir.1996)). "In addition to claims that were actually litigated in state court, the Rooker–Feldman doctrine bars lower federal courts from exercising jurisdiction over claims that are 'inextricably intertwined' with state court determinations." Kropelnicki v. Siegel, 290 F.3d 118, 128 (2d Cir.2002). In Moccio, the Second Circuit explained that "inextricably intertwined" means that "where a federal plaintiff had an opportunity to litigate a claim in a state proceed-

---

**3.** The complaint alleges that prior to receiving a $12,600 check in November 2001, plaintiff's inmate account "spendable" balance stood at $356.84. Complaint ¶ 13. It is not apparent why plaintiff seeks "reimbursement" for that amount, however.

ing (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion." *Id.* at 199–200.

In a case that is factually indistinguishable from this one, Magistrate Judge Jonathan W. Feldman of this district issued a Report and Recommendation, later adopted by Chief Judge Richard J. Arcara, dismissing a claim by an inmate who sought to enjoin state officials from applying the SOS law to him after a default judgment had been entered against the inmate in an action brought against him by the victims of his crime. *See McClary v. Pataki*, No. 02–CV–330A (W.D.N.Y.), Dkt. ## 30, 36. The plaintiff in *McClary* also sought damages in the amount of the funds in his inmate account that had been attached by the state pursuant to the SOS law and paid to the victims.

In concluding that the court lacked subject matter jurisdiction over the plaintiff's claims, Magistrate Judge Feldman stated that "it seems beyond cavil that David McClary initiated the instant federal court lawsuit in order to undo the state court default judgment entered against him. The default judgment is therefore, inextricably intertwined with McClary's current federal claims and hence *Rooker–Feldman* applies." Report and Recommendation at 11. *The same reasoning applies here.* Plaintiff is essentially seeking to prevent the state court judgment from being enforced against him, which is exactly what the *Rooker–Feldman* doctrine prohibits.

Although plaintiff contends that *McClary* is distinguishable from the case at bar, he has not identified any material differences between the two cases. Plaintiff contends that he "does not allege that the state court judgement 'itself' caused his injury," but that defendant "violated his constitutional right to be protected from any Ex Post Facto law(s), and Bill of Attainder(s) ...." Plaintiff's Response to Defendant's Motion (Dkt.# 8) at 8. Apparently he means that he is asserting a facial challenge to the SOS law itself, rather than asserting that the law is unconstitutional as applied to plaintiff.

There is authority that, in some circumstances, a facial challenge to a state statute will not be barred by the *Rooker–Feldman* doctrine, even if a state court previously applied the statute to the plaintiff. *See, e.g., Howard v. Whitbeck*, 382 F.3d 633, 640 (6th Cir.2004); *Centifanti v. Nix*, 865 F.2d 1422, 1430 (3d Cir.1989). The plaintiff in *McClary* did raise a similar argument, however, and Magistrate Judge Feldman rejected it, stating:

> [T]he Court is obliged to do more than simply accept the legal label McClary now seeks to assign to his federal causes of action. In his federal lawsuit McClary is surely challenging the constitutionality of the SOS law amendments, but he is just as surely doing so in the context of seeking to overturn the one hundred million [dollar] judgment entered against him in state court. A plaintiff may not assert a general constitutional challenge that is inextricably intertwined with the state court action.

*McClary*, Report and Recommendation at 16 (citations omitted). Magistrate Judge Feldman went on to say that "it is difficult to imagine what relief McClary would be entitled to were this Court to rule that his general constitutional claim was valid in a way that would not upset the state court judgment. The general constitutional challenge asserted is tied up in the state court judgment and cannot be separated from that judgment." *Id.* at 17.

Again, the same reasoning applies here. Plaintiff's attack on the SOS law is tied up in his request for relief from the actual

application of the SOS law to him arising out of the state court default judgment against him. There is no way to separate his facial challenge to the statute from his claim that the SOS law has been unconstitutionally applied to him.

Plaintiff also contends that this case is distinguishable from *McClary* because he does not seek damages, but only injunctive relief. That argument fails for several reasons. First, *McClary* also sought to enjoin the state from applying the SOS law to comply with the default judgment. *See McClary*, Report and Recommendation at 10. Second, the effect of the injunctive relief sought here is, at bottom, no different from seeking "damages" for monies paid to the crime victim. Plaintiff does not want his inmate account balance to be depleted by any such payments, and he does not want his access to that account to be blocked. It is the fact of the state court judgment, then, that has caused plaintiff the "injury" underlying those claims for relief.

Third, whatever label plaintiff applies to his requests for relief, he has asked for "reimbursement," which is simply another way of saying that he wants an award of damages. As Magistrate Judge Feldman noted, "[i]n determining the applicability of *Rooker–Feldman*, courts 'must pay close attention to the *relief* sought by the federal-court plaintiff.'" *McClary*, Report and Recommendation at 10 (quoting *Kenmen Engineering v. City of Union*, 314 F.3d

468, 476 (10th Cir.2002)). If "the state-court judgment *caused*, actually and proximately, the injury for which the federal-court plaintiff seeks redress ..., *Rooker–Feldman* deprives the federal court of jurisdiction." *Kenmen Engineering*, 314 F.3d at 476. *Accord Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir.1996). That is indisputably the situation here, and this Court therefore lacks subject matter jurisdiction over plaintiff's claims.

Finally, for the reasons stated in *McClary*, I also reject plaintiff's contention that he did not have a full and fair opportunity to litigate his present claims in the state court action. That argument must fail in light of the Second Circuit's decision in *Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir.2002), in which the court of appeals held that a debtor's claim that her creditor's attorney had made certain misrepresentations in violation of the Fair Debt Collection Practices Act was inextricably intertwined with the state court judgment in the underlying debt collection action and, as such, was barred from federal-court review by the *Rooker–Feldman* doctrine, notwithstanding the fact that the state court had entered a default judgment against her.[4] The *Kropelnicki* court stated that the plaintiff "had a full and fair opportunity to raise [her misrepresentation] claim in state court," *id.* at 129, and that, accordingly, "the *Rooker–Feldman* doctrine bars us from reviewing this claim." *Id.*

---

**4.** Although *Kropelnicki* involved the application of Connecticut law on claim preclusion, the same result obtains where the default judgment was entered in a New York State court. *See, e.g., Ackermann v. Doyle*, 43 F.Supp.2d 265, 273 (E.D.N.Y.1999) ("the *Rooker–Feldman* doctrine is not rendered inapplicable merely because no trial on the merits was held in [plaintiff's] State Case"); *Vasile v. Dean Witter Reynolds Inc.*, 20 F.Supp.2d 465, 493 (E.D.N.Y.1998) (pursuant to *Rooker–Feldman* doctrine, district court

lacked jurisdiction to adjudicate litigant's claims against state court judges that arose from the entry of a state-court default judgment against him); *Odom v. Columbia Univ.*, 906 F.Supp. 188, 196 (S.D.N.Y.1995) (under the *Rooker–Feldman* doctrine, district court lacked jurisdiction to declare that default judgment obtained by university in its debt collection action in state court was invalid, since the student was essentially seeking federal review of state court's decision to enter default judgment).

## CONCLUSION

Defendant's motion to dismiss the complaint (Dkt. # 5) is granted, and the complaint is dismissed.

Plaintiff's motion for reconsideration (Dkt.# 12) of the Court's December 23, 2004 Order denying plaintiff's motion for a preliminary injunction is denied.

IT IS SO ORDERED.