Dennis SINDONE, Plaintiff,

v.

Raymond KELLY, as Commissioner of the New York City Police Department Bernard B. Kerik, as Former Commissioner of the New York City Police Department, the New York City Police Department; and the City of New York, Defendants.

No. 05 Civ. 7860(VM).

United States District Court, S.D. New York.

June 6, 2006.

Kenneth E. Gordon, Gordon, Gordon & Schnapp, P.C., New York, NY, for plaintiff.

Melissa Gail Shear, New York City Law Department, New York, NY, for defendants.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Dennis Sindone ("Sindone"), a former Deputy Inspector at the New York City Police Department ("NYPD"), brought this action against defendants NYPD Commissioner Raymond Kelly ("Kelly"), former NYPD Commissioner Bernard B. Kerik ("Kerik"), the NYPD and the City of New York (collectively "Defendants"), pursuant to 42 U.S.C. §§ 1983 and 1988. Sindone alleges a denial of his right to due process of law in connection with the termination of his employment with the NYPD. Sindone's dismissal occurred following a trial at which he was found guilty of several disciplinary charges of official misconduct. His due process claim asserts that he was denied a right to neutral or unbiased adjudicators by reason of public comments made by Kerik and former Mayor Rudolph Giuliani ("Giuliani") while the charges against Sindone were pending. Defendants move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the complaint on the grounds that it fails to state a claim upon which relief may be granted, that under the *Rooker–Feldman* doctrine this Court lacks jurisdiction to adjudicate this action, and that Sindone's claims are barred by the rules of res judi-

cata. For the reasons discussed below Defendants' motion is granted.

## I. *FACTS*

According to the complaint, Sindone joined the NYPD as a police officer in 1983 and was appointed by Kerik to the position of Deputy Inspector in 2001. Approximately six weeks after that promotion, Sindone was arrested on a federal charge of criminal conspiracy. The indictment alleged that Sindone had conspired to steal money from a drug dealer by means of a staged arrest. On June 1, 2001, the day after Sindone's arrest, the NYPD brought disciplinary charges against him arising out of his federal indictment. Sindone denied both the federal and the NYPD accusations. The administrative proceeding was stayed pending the resolution of the criminal conspiracy charges, which were tried in federal court in this district. Sindone asserts that prior to and during the course of the federal trial several high ranking New York City officials, including Kerik and Giuliani, made public statements effectively conveying that the NYPD had already determined that Sindone was guilty of misconduct and would be disciplined accordingly. The federal trial resulted in Sindone's acquittal by a jury on March 6, 2002.

In June 2002, the NYPD amended its disciplinary charges against Sindone and asserted five counts of misconduct: (1) conspiracy between April and July 1996 to conduct an unlawful seizure designed to deprive an individual of money; (2) grand larceny by stealing $60,000 in July 1996 in a staged arrest of a drug dealer; (3) perjury in his testimony at the federal criminal trial; (4) issuing a false financial statement in connection with an application for a mortgage; and (5) attempted petit larceny sometime during the mid–1980s allegedly for stealing money from a safe in a bar.

The NYPD conducted a disciplinary hearing presided over by Deputy Commissioner Rae Downes Koshetz ("Koshetz") during a six-day period from June 19 to June 26, 2002. Sindone complains that even though Kerik had stated publicly that he believed Sindone was guilty of the federal charges, the NYPD proceedings against him were conducted by an official who reported to the Police Commissioner. Sindone was represented by counsel at the departmental proceeding and had the opportunity to introduce evidence on his behalf, including calling and cross-examining witnesses.

In a Report and Recommendation to Kelly issued on August 23, 2002, Koshetz found Sindone guilty of charges 1, 2, and 4, and not guilty of charges 3 and 5. As a penalty, she recommended dismissal. Kelly, who by then had succeeded Kerik as Police Commissioner, accepted Koshetz's recommendation and dismissed Sindone as of September 11, 2002. Sindone challenged that action in a proceeding brought under Article 78 of the New York Civil Practice Law and Rules ("Article 78") in January 2003. The Article 78 proceeding was adjudicated by the State Supreme Court, Appellate Division (the "Appellate Division"), which ruled that the NYPD's findings with regard to the charges against Sindone were supported by substantial evidence and that dismissal did not shock the court's sense of fairness and was therefore an appropriate penalty. *See Sindone v. Kelly,* 15 A.D.3d 168, 788 N.Y.S.2d 602 (1st Dep't.2005).

The theory of Sindone's constitutional claim is that an impartial arbiter is a core requirement of federal due process guarantees, and is thus essential as much in administrative as in judicial proceedings. He argues that he was deprived of a neutral forum and/or an impartial arbiter at the NYPD hearing because Giuliani and

Kerik had already proclaimed their belief in Sindone's guilt on the criminal charges, and consequently there was little chance that he would be able to obtain a fair adjudication from an NYPD Deputy Commissioner or that the new Commissioner would not be influenced by his predecessor's public remarks.

Defendants respond that Sindone provides no specific factual grounds for his claims of bias on the part of Koshetz and Kelly, and that his conclusory statements that those officials were not impartial adjudicators by reason of comments made by the former mayor and former NYPD Commissioner are insufficient to support a claim for relief. Moreover, according to Defendants, even if those unsupported allegations were enough to state a claim, a neutral adjudicator is not a necessary component of federal due process rights at a public employee's pre-termination proceeding because an adjudication by a court pursuant to Article 78 provides a sufficient post-deprivation protection for federal due process purposes. Defendants further contend that because the merits of Sindone's claims regarding the legality of his termination were resolved against him by the Appellate Division, Sindone's federal action to review that final state court judgment is barred by the doctrines of *Rooker–Feldman* and claim preclusion.

Because a *Rooker–Feldman* challenge raises the issue of whether the Court has subject matter jurisdiction to adjudicate this action, the Court addresses this argument first.

## II. *DISCUSSION*

### A. *ROOKER–FELDMAN DOCTRINE*

Defendants argue that under the *Rooker–Feldman* doctrine the Court lacks subject matter jurisdiction to review Sindone's claims insofar as they are "inextricably intertwined" with or not independent of the Appellate Division's ruling in the Article 78 proceeding upholding Kelly's decision, and would thus require this Court to review a final judgment of a state court. *See District of Columbia Crt. of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 125 S.Ct. 1517, 1521–22, 161 L.Ed.2d 454 (2005); *Hoblock v. Albany Bd. of Elections,* 422 F.3d 77, 85 (2d Cir.2005).

Sindone counters that the *Rooker–Feldman* doctrine does not apply here because he does not dispute or seek to review and overturn the judgment of the state court in the Article 78 proceeding. That decision, Sindone contends, found only that substantial evidence had been presented to the NYPD supporting Kelly's determination to adopt Koshetz's ruling. Instead, he argues that his federal claim is grounded on the denial of his due process right to have the merits of the administrative charges against him decided by a fair and impartial arbiter, rather than by a biased one, and that this issue was not raised at the NYPD hearing nor considered by the Appellate Division.

The *Rooker–Feldman* doctrine holds that federal courts lack subject matter jurisdiction over actions that essentially amount to appeals from final state court decisions to the extent the federal suits "seek direct review of judgments of state courts, or . . . seek to resolve issues that are 'inextricably intertwined' with earlier state court determinations." *Vargas v. City of New York,* 377 F.3d 200, 205 (2d Cir.2004). In *Exxon Mobil,* the Supreme Court noted that in the years since its decisions in *Rooker* and *Feldman* lower federal courts had incorrectly read their doctrine "to extend far beyond the con-

tours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal court jurisdiction concurrent with jurisdiction exercised by state courts, and superceding the ordinary application of preclusion law ..." 544 U.S. at 282–83, 125 S.Ct. at 1521.[1]

In response, the Second Circuit reformulated its reading of the *Rooker–Feldman* doctrine in the light of *Exxon Mobil*. In *Hoblock*, the Circuit Court declared that the phrase "inextricably intertwined," as it derived from *Feldman*, "has no independent content" and had led lower federal courts, including the Second Circuit, to apply *Rooker–Feldman* too broadly. *Hoblock*, 422 F.3d at 86–87. In providing guidance for the application of *Rooker–Feldman* as explicated by *Exxon–Mobil*, the Circuit Court enunciated four requirements that animate the doctrine, two that it characterized as procedural and two substantive. Procedurally, the plaintiff in the federal action must have been the losing party in the prior state court proceeding, and the judgment in that suit must have been rendered before the federal action commenced. Substantively, the federal plaintiff "must complain of injury from a state-court judgment and ... seek federal-court review and rejection of the state-court judgment." *Id.* at 85.

■■■ In synthesis, the *Hoblock* court elaborated several principles that now guide the application of *Rooker–Feldman* in this Circuit and that are relevant to an adjudication of the issue presented by the instant case: (1) *Rooker–Feldman* and preclusion rules "are entirely separate doctrines," thus recognizing that *Exxon Mobil*

abrogated prior Second Circuit law, enunciated in *Moccio v. New York State Office of Court Adm.*, 95 F.3d 195, 202 (2d Cir. 1996), which had held that the two principles were coextensive, *see Hoblock*, 422 F.3d at 85; (2) "a plaintiff who seeks in federal court a result opposed to the one he achieved in state court does not, for that reason alone, run afoul of *Rooker–Feldman*," *id.* at 87; (3) presenting in federal court a legal theory not raised in state court does not save a plaintiff from application of *Rooker–Feldman* "if the federal suit nonetheless complains of injury from a state-court judgment and seeks that judgment reversed," *id.* at 86; and (4) a federal suit complains of injury from a state court judgment, and thus would bar exercise of federal jurisdiction under *Rooker–Feldman*, when the injury that is the subject of the federal action is "caused" or "produced" by the prior state court ruling. In other words, the injury in question derives from the state court decision when that judgment constitutes the "source of the injury," as opposed to being merely a court adjudication expressly affirming or otherwise leaving undisturbed a determination made by a third party that embodies the wrongful conduct the plaintiff asserts brought about the claimed harm in the first instance. *See id.* This causal requirement may be satisfied under two circumstances that emerge from the facts in *Hoblock* and the Second Circuit's interpretation of *Exxon Mobil*: (1) where, as in *Feldman*, the state court itself is the decision-maker whose action produces the injury the plaintiff challenges in the federal suit,[2] or (2) where, as in *Hoblock*, the

---

1. In *Harris v. New York State Dep't of Health*, 202 F.Supp.2d 143, 158–64 (S.D.N.Y.2002), this Court discussed at length various complexities entailed in the application of *Rooker–Feldman*, especially in the context of the in-

terplay of that doctrine with the principles of issue and claim preclusion under state law.

2. In *Exxon Mobil*, the Supreme Court declared that *Rooker–Feldman* was confined to cases "of the kind from which the doctrine

underlying harmful action complained about was actually taken by a third party in compliance with an order embodied in a judgment of a state court.[3]

The central inquiry that emerges from these principles, the Second Circuit stressed, is rooted in the requirement that "federal plaintiffs are not subject to the *Rooker–Feldman* bar unless they *complain of an injury* caused by a state judgment." *Id.* (emphasis in original). Further explaining this standard, the Circuit Court stated:

> a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left

unpunished by it. Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear.

*Id.* at 88.[4]

■ Sindone argues that *Rooker–Feldman* does not apply to this case because he does not dispute the Appellate Division's findings or seek review of its judgment that the NYPD proceeding was supported by substantial evidence and that the penalty of termination of his employment by the NYPD was appropriate. He insists that the issue he raises here—that the NYPD proceeding denied him federal due process because it provided him a biased decision-maker rather than an impartial one—was

acquired its name: cases brought by state-court losers complaining of injuries *caused by state-court judgments* rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. at 283–84, 125 S.Ct. at 1521–22 (emphasis added). In *Feldman* the injury plaintiffs complained of in the federal suit was "caused" directly a state court judgment insofar as the underlying dispute entailed a denial by the District of Columbia Court of Appeals of plaintiffs' applications for admission to the bar, a process ordinarily administered and determined directly by state courts in many jurisdictions. The subsequent suit in federal courts thus challenged and sought reversal of the judgment of a local court, not that of a third party, from which the injury at issue thus directly derived.

**3.** For instance, in *Hoblock*, plaintiffs' federal suit challenged a county Board of Election's refusal to tally certain disputed ballots. In deciding not to count the ballots, the Board had complied with the judgment of the state court in a prior action brought by some of the same voters. The Circuit Court found that *Rooker–Feldman* applied because the Board had acted "under compulsion of a state-court order," 422 F.3d at 88, and therefore "the state-court judgment produced the Board's refusal to count the ballots, the very injury of which the voters complain," *id.* at 89.

**4.** To illustrate the application of these principles, the *Hoblock* court offered two examples. In the first, where *Rooker–Feldman* would bar the federal suit, the court posited a judgment by a state court terminating a father's parental rights and ordering state custody of the child. A subsequent action by the father in federal court alleging violation of due process rights and demanding the return of his son, would be considered complaining of an "injury caused by the state judgment and seeking its reversal." *Id.* at 87. Such a suit would run afoul of *Rooker–Feldman*, "*regardless of whether* [*the plaintiff*] *raised any constitutional claims in state court*, because only the Supreme Court may hear appeals from state-court judgments." *Id.* (emphasis added). In the second illustration, a federal suit to which *Rooker–Feldman* would not apply, an employee loses a state court action charging discrimination under both federal and state law and then brings the same case in federal court. Though he would be seeking a federal court decision denying the state court's determination that the employer was not liable, the action would be alleging injury based not on the state court's judgment, but on the employer's discrimination. Thus, the suit would not be barred by *Rooker–Feldman* even though the state court chose not to remedy the alleged injury. *See id.* at 87–88.

not presented to the state court nor considered in the Article 78 proceeding. To this extent, he argues that he is not appealing from anything decided by the state court in the Article 78 proceeding. Citing *Hoblock,* he asserts that the injury he complains of was caused by the NYPD, not the state court judgment.

Concerning Sindone's first argument, as *Hoblock* makes clear, that Sindone did not raise his due process claim in the NYPD disciplinary hearing or in the Article 78 proceeding, and therefore the state court never passed on the merits of this theory, does not preclude application of *Rooker–Feldman. See* 422 F.3d at 86 (noting if a federal suit complains of an injury from a state court judgment and seeks to reverse it "[j]ust presenting in federal court a legal theory not raised in state court . . . cannot insulate a federal plaintiff's suit from *Rooker–Feldman* . . .").

Nonetheless, under the *Hoblock* analysis, even if Sindone's federal claim sought to deny and reverse the state court judgment, his claim would be "independent" for *Rooker–Feldman* purposes to the extent that the "source of the injury" he complains about emanates in the first instance from his dismissal by the NYPD, and not collaterally from the state court judgment rendered in the Article 78 proceedings affirming the NYPD's action. *Id.* On this basis, the Appellate Division decision did not "cause" or "produce" the injury for which Sindone seeks relief—his allegedly wrongful dismissal from the police force—because the state court itself did not take the initial action to terminate Sindone's employment, nor did the NYPD act under compulsion of a state court order when it made the decision to dismiss Sindone. *See id.* at 89. Rather, the state court judgment merely "ratified, acquiesced in, or left unpunished" the decision of the NYPD. *See id.* at 88 ("The fact that the

state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker–Feldman,* of the state-court judgment.") Accordingly, the Court concludes that Sindone's action before this Court presents an independent federal claim which averts dismissal of this case under *Rooker–Feldman.* The Court thus has jurisdiction and may exercise it to determine whether Defendants nonetheless may prevail in defeating the federal suit under ordinary state law principles of preclusion. *See Exxon Mobil,* 544 U.S. at 292–93, 125 S.Ct. at 1527.

## B. *CLAIM PRECLUSION*

Defendants contend that Sindone's federal action is barred by application of New York principles of claim preclusion, to the extent that the Article 78 proceeding determined the merits of Sindone's termination by the NYPD and all of the claims he seeks to relitigate were decided or could have been raised in the state court action, which involved the same parties. In response, Sindone relies on Second Circuit case law for the proposition that claim preclusion does not apply to bar a suit brought by a plaintiff unsuccessfully in an action under Article 78 and seeking damages pursuant to 42 U.S.C. § 1983, on the ground that the state court in those proceedings "does not have the power to award the full measure of relief available in subsequent § 1983 litigation." *Vargas,* 377 F.3d at 205.

Under New York's "transactional approach" to res judicata principles, claims asserted in a federal action involving the same parties or those in privity are barred if they were raised or could have been raised in a prior state proceeding, arise from the "same transaction or series of transactions" as the previously resolved state court claims, and were adjudicated in

the state litigation on the merits. *Ferris v. Cuevas,* 118 F.3d 122, 126 (2d Cir.1997) (internal quotation omitted). As long as a claim separately asserted in different proceedings is grounded on the same "factual grouping," it is deemed part of the same cause of action and thus precluded "without regard to whether it is based upon different legal theories or seeks different or additional relief." *Davidson v. Capuano,* 792 F.2d 275, 278 (2d Cir.1986) (*citing Smith v. Russell Sage College,* 54 N.Y.2d 185, 445 N.Y.S.2d 68, 429 N.E.2d 746, 749 (1981)); *see also Yoon v. Fordham Univ. Faculty and Admin. Retirement Plan,* 263 F.3d 196, 200 (2d Cir.2001).

In assessing whether or not Sindone's claim was resolved on the merits in the state court and thus barred by res judicata, the Court notes some conceptual difficulties in Sindone's argument on this point that make his theory curiously tautological, and somewhat contradictory. Sindone concedes that in the Article 78 proceeding he had a full opportunity to litigate before state court his challenge of the evidence before the NYPD and Koshetz's decision, and he further asserts that he is not disputing or appealing from anything the Appellate Division decided. Yet, what he seeks in this action is essentially the same relief he requested in the Article 78 proceeding—a reversal of his dismissal and a reinstatement of his employment, along with additional compensatory and punitive damages.

Sindone's statement that he is not challenging or appealing the evidentiary basis for the NYPD's determination of his guilt or the appropriateness of the penalty imposed on him, amounts to an admission that as an evidentiary matter the state judgment against him is well-founded and justified his dismissal. That being the case, if indeed Sindone takes no issue with the state court judgment, his argument raises a question as to the basis on which the Court would grant him the relief he seeks here without necessarily setting aside a state court determination Sindone represents he is not challenging. Under these circumstances, what precisely is the state action that gives rise to a case or controversy concerning the injury Sindone complains about?

The Court finds difficulties disassociating the content of the NYPD and state court litigation proceedings from the claim Sindone brings to this Court. For, on Sindone's own theory, the two proceedings are integrally related. Sindone cannot assert that he does not dispute the state court ruling that there was sufficient evidence to support Koshetz's and Kelly's determination, and at the same time demand that the decision should be overturned by this Court because the NYPD arbiters were inherently biased. Presumably, as Sindone himself acknowledges, the reason for his challenge to the NYPD's decision is that it was Koshetz's and Kelly's bias that provided the motivation and grounds for their finding sufficient evidentiary support for their ruling. In other words, the adjudicators' alleged bias undermined the sufficiency of the evidence; were it not for that circumstance the record would not have been enough to support a reasonable finding that Sindone was guilty because theoretically an unbiased decision-maker would have rejected the testimony of the witnesses against Sindone, accepted Sindone's version of the events, and ruled in his favor. On this reading of Sindone's theory, the Court could not avoid delving into the merits and reasonableness of the state court judgment that Sindone maintains he is really not disputing or seeking to reverse.

The Court need not expend any more energy wading deeper into the conceptual bog Sindone's arguments present as re-

gards application of the claim preclusion doctrine. For even if the Court ruled that Sindone's claim is not barred by res judicata principles, it finds on other grounds, as discussed below, that Sindone's complaint does not state a federal due process claim on which relief could be granted.

## C. *POST–DEPRIVATION REMEDY*

■ Sindone's due process claim cannot establish a right to a neutral adjudicator under the circumstances of this case. The Court finds controlling authority on this issue in *Locurto v. Safir ("Locurto I")*, 264 F.3d 154, 174–75 (2d Cir.2001)[5] and *Hellenic Am. Neighborhood Action Comm. ("HANAC") v. City of New York*, 101 F.3d 877, 881 (2d Cir.1996). In *Locurto I*, the plaintiffs, New York City police and fire officers, challenged their termination from their public employment for having engaged, during their participation in a Labor Day parade, in expressive conduct deemed racially offensive. Plaintiffs claimed that the departmental proceedings which resulted in the decisions to dismiss them were unfair and constitutionally deficient. Specifically, they pointed to public statements by Mayor Guiliani and the Police Commissioner suggesting that they had decided to terminate the plaintiffs' employment even before the administrative proceedings against them had commenced. Plaintiffs claimed that in light of the explicit views the mayor had expressed in his public statements, the two departments' commissioners, who were the final administrative adjudicators, were not impartial and should have recused themselves to safeguard the neutrality of the pre-termination proceedings.

The Second Circuit rejected plaintiffs' theory, noting that the requisite pre-termination hearing is a "minimal one." *Locurto I*, 264 F.3d at 173 (*citing Gilbert v. Homar*, 520 U.S. 924, 929, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997)). The Court, finding no contrary precedent in this or any other circuit, held that a neutral adjudicator is not a necessary component of federal due process at a pre-termination hearing, as long as a full adversarial hearing is provided post-termination at which the legality of the dismissal may be challenged. *See id.*

■ Here Sindone's conclusory allegations that Koshetz was necessarily biased solely by reason of her having reported to Kerik, and hence that her judgment must have been affected by Kerik's public comments, and that Kelly similarly should have recused himself on account public statements made by his predecessor as much as one year prior to Kelly's determination, are insufficient grounds to state a due process violation claim. As the Second Circuit has remarked, "administrators serving as adjudicators are presumed to be unbiased." *Wolkenstein v. Reville*, 694 F.2d 35, 41 (2d Cir.1982). That presumption can be rebutted by a showing of "disqualifying interest, either pecuniary or institutional." *Id.* Sindone's pleadings contain no allegations of any disqualifying interest on the part of Koshetz or Kelly sufficient to rebut the presumption of their impartiality when serving as administrative adjudicators. That Koshetz may once have served under Kerik, and that Kelly succeeded Kerik as Police Commissioner several months before his decision here at issue, does not constitute a sufficient institutional interest

---

**5.** In a more recent decision arising from this case, the Second Circuit made reference to and endorsed the ruling of the *Locurto I* panel on the central issue regarding the adequacy of Article 78 as a post-termination remedy for federal due process purposes. *See Locurto v. Giuliani ("Locurto II")*, 447 F.3d 159, 171 n. 4 (2d Cir.2006).

to require their disqualification. *See id.* (noting that merely stating that an administrative law judge was an employee of the city defendant was not enough to establish disqualifying bias).

■ Moreover, federal due process standards are met when a public employee is afforded "some kind of hearing" prior to termination, followed by fuller post-termination proceedings. *See Locurto I,* 264 F.3d at 171 (noting that when a tenured public employee is terminated, "procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards.") (*citing Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 545–46, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)); *see also Locurto II,* 447 F.3d 159, 17, n. 4 ("This is not to say that a neutral arbitrator at a pre-termination administrative hearing is a requirement of due process. As we held in *Locurto I,* a pre-termination hearing before a non-neutral adjudicator may yet comport with due process" where the state, post-termination, affords a full adversarial hearing before a neutral adjudicator).

Sindone seeks to distinguish *Locurto I* on the ground that plaintiffs there conceded that their Article 78 proceeding afforded them a full adversarial hearing and that that concession was not binding on him. He notes that Article 78 determinations are limited to questions of law; that review is confined to the facts and record before the agency; that deference must be given to the findings of the administrative decision-maker and that judicial review is subject to a rational basis standard. Based on these limitations, he asserts that an Article 78 proceeding does not provide the full adversarial hearing the *Locurto I* due process test requires. The Court finds no merit in the distinctions Sindone seeks to draw.

First, Sindone's argument is somewhat circular. Its premise is that during the Article 78 proceeding he could not have obtained a full adversarial hearing to fairly litigate the merits of his claim because the procedure available to him before the NYPD was not before a neutral adjudicator. But this contention is predicated on two flaws: first, Sindone's conclusory assertion that Koshetz was necessarily biased, a charge he does not support with any factual allegations demonstrating sufficient disqualifying interest, and second, the legal premise that Sindone is entitled to a neutral adjudicator at the pre-termination proceeding, a proposition that the *Locurto I* court unequivocally rejected in the context of the availability of an Article 78 proceeding to litigate a post-termination challenge.

Second, insofar as Sindone endeavors to find constraints and highlight deficiencies in the Article 78 proceeding as an adequate forum to adjudicate his due process claim, his argument ignores that *Locurto I* requires only that the post-termination procedure afford a "full adversarial hearing," 264 F.3d at 171, and that none of the Article 78 shortcomings he describes—which incidentally apply equally to numerous other limited purpose judicial proceedings—in any way diminish the long recognized classification of Article 78 special proceedings as adequate adversarial hearings for federal due process purposes. The procedures there provide required notice, representation by counsel, a public hearing before a court and direct appeals.

Nowhere in the applicable case law is there indication that Article 78 proceedings may be held to be insufficient adversarial hearings by reason of the absence of any of the additional procedures or protections to which Sindone points. On the

contrary, in *Locurto I* itself, as well as in other cases, the Second Circuit has gone to considerable lengths to recognize the adequacy of Article 78 procedures as affording adequate safeguards to satisfy federal procedural due process standards. The *Locurto I* court observed, for example, that:

> An Article 78 proceeding permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims. Petitioners proceeding under Article 78 may raise claims that the agency adjudicator was biased and prejudged the outcome, that the determination was slanted by the adjudicator's refusal to recuse herself, or that ex parte communications with other officials may have infected the adjudicator's ruling....

264 F.3d at 174–75 (internal citations omitted); *see also HANAC,* 101 F.3d at 881.

Further bolstering this conclusion, in *HANAC* the Second Circuit noted that it had held on numerous occasions that "an Article 78 proceeding is a perfectly adequate post-deprivation remedy," that the procedure satisfies due process purposes "even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit," that a petitioner may obtain a trial where a triable issue of fact is raised, and that constitutional issues can be decided there. *HANAC,* 101 F.3d at 881 (*citing Moccio,* 95 F.3d at 202 and *Christ the King Reg. High Sch. v. Culvert,* 815 F.2d 219, 224–25 (2d Cir.1987)); *see also Vargas,* 377 F.3d at 208 ("We have held that an Article 78 proceeding ... provides a meaningful remedy where violations of due process by a local governmental entity are alleged.") (*citing Gudema v. Nassau County,* 163 F.3d 717, 724 (2d Cir.1998)).

Accordingly, on the authority of *Locurto I* and related precedent, the Court concludes that Sindone cannot sustain a due process claim on the ground that he was denied a right to a neutral arbitrator.

## III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Docket No. 11) of defendants herein to dismiss the complaint of plaintiff Dennis Sindone is GRANTED.

**SO ORDERED.**